```
                    UNITED STATES DISTRICT COURT
                   SOUTHERN DISTRICT OF NEW YORK
         ----------------------------:

UNITED STATES OF AMERICA,    : Docket No.: 24-cr-00227

                Plaintiff,    :

        v.                    :

DANIEL SIKKEMA,               : New York, New York

                              : February 11, 2025

                Defendant.    :

         ----------------------------:


                       PROCEEDINGS BEFORE
              THE HONORABLE STEWART D. AARON
              UNITED STATES MAGISTRATE JUDGE



APPEARANCES:

For Plaintiff:        UNITED STATES ATTORNEY'S OFFICE
                      SOUTHERN DISTRICT OF NEW YORK
                      BY:  MEREDITH FOSTER, ESQ.
                           CHELSEA SCHINNOUR, ESQ.
                           REMY GROSBARD, ESQ.
                      1 St. Andrew's Plaza
                      New York, New York 10007

For Defendant:        LEVITT & KAIZER
                      BY:  NICHOLAS G. KAIZER, ESQ.
                      40 Fulton Street, 17th Floor
                      New York, New York 10038

Transcription Service: Marissa Lewandowski
                       Phone:  (631) 813-9335
                       E-mail:marissamignano@gmail.com



Proceedings recorded by electronic sound recording;
Transcript produced by transcription service
```

INDEX

E X A M I N A T I O N S

| Witness | Direct | Cross | Re-Direct | Re-Cross |
|---------|--------|-------|-----------|----------|
| None | | | | |

E X H I B I T S

| Exhibit Number | Description | ID | In | Voir Dire |
|----------------|-------------|-----|-----|-----------|
| None | | | | |

1          THE DEPUTY CLERK:  United States vs. Daniel

2     Sikkema, case number 24-cr-227.  Counsel, please

3     state your appearance for the record.

4          MS. FOSTER:  Good afternoon, Your Honor.

5     Meredith Foster for the Government.  With me at

6     counsel's table is my colleague Remy Grosbard,

7     Chelsea Schinnour from the Department of Justice and

8     Special Agent William Ballinger from the FBI.

9          THE COURT:  Good afternoon.

10          MR. KAIZER:  Nicholas Kaizer, Levitt &

11     Kaizer.  I have Daniel Sikkema sitting next to me,

12     Your Honor.

13          THE COURT:  Good afternoon.

14          MR. KAIZER:  Good afternoon.

15          THE COURT:  May I please have the date and

16     time of arrest?

17          MS. FOSTER:  The defendant was arrested

18     Today at approximately 10:25 a.m.

19          THE COURT:  Mr. Sikkema, I'm Magistrate

20     Judge Aaron.  You're here because you're charged

21     with certain crimes by a superseding indictment.

22          The purpose of today's proceeding is to

23     advise you of certain rights that you have, inform

24     you of the charges against you, and to decide under

25     what conditions, if any, you shall be released

1    pending trial.

2           Now I'm going to explain certain

3    constitutional rights that you have.  You have the

4    right to remain silent.  You're not required to make

5    any statements.  Even if you've already made

6    statements to the authorities, you don't need to

7    make any further statements.  Any statement you do

8    make can be used against you.

9           You have the right to be released, either

10   conditionally or unconditionally pending trial,

11   unless I find there are no conditions that would

12   reasonably assure your presence at future court

13   appearances and the safety of the community.

14           If you're not a United States citizen, you

15   have the right to request that a government attorney

16   or a law enforcement official notify a consular

17   officer from your country of origin that you've been

18   arrested.  And in some cases, a treaty or other

19   agreement may require the United States Government

20   to give that notice whether you request it or not.

21           You have the right to be represented by an

22   attorney during all court proceedings, including

23   this one, and during all questioning by the

24   authorities.  And I note that you've retained

25   counsel who's representing you here today.

1              Do you understand those rights as I've just
2    explained them.
3              THE DEFENDANT:  Yes, I understand.
4              THE COURT:  All right.  The document that
5    contains the charges against you is a superseding
6    indictment that was returned by a grand jury here in
7    the Southern District of New York.
8              The superseding indictment contains the
9    following counts:  Count One, murder-for-hire or
10   conspiracy resulting in death.  Count Two,
11   murder-for-hire resulting in death.  Count Three,
12   conspiracy to murder and maim a person in a foreign
13   country.  And Count Four, passport fraud, which was
14   the charge in the initial complaint in this court
15   upon which you were arrested some time ago.
16             Let me ask counsel, have you had an
17   opportunity to review the charges of the indictment
18   with your client?
19             MR. KAIZER:  I have.
20             THE COURT:  And do you waive its public
21   reading?
22             MR. KAIZER:  We do.
23             THE COURT:  All right.  I want to direct
24   the prosecution to comply with its obligations under
25   *Brady against Maryland* and its progeny to disclose

1    to the defense all the information, whether

2    admissible or not, that is favorable to the

3    defendant, material either to guilt or to punishment

4    and known to the prosecution.

5          Possible consequences for noncompliance may

6    include dismissal of individual charges of the

7    entire case, exclusion of evidence and professional

8    discipline or court sanctions on the attorneys

9    responsible.  I will be entering a written order

10   more fully describing this obligation and the

11   possible consequences of failing to meet it.  And I

12   direct the prosecution to review and comply with

13   that order.

14         Does the prosecution confirm that it

15   understands its obligations and will fulfill them?

16         MS. FOSTER:  Yes, Your Honor.

17         THE COURT:  All right.  And Katherine, just

18   remembered to issue a 5(f) order.

19         THE DEPUTY CLERK:  Yes.

20         THE COURT:  All right.  So I'll next hear

21   from the Government with respect to its position on

22   bail, detention or release.

23         MS. FOSTER:  The Government seeks

24   detention.

25         THE COURT:  And what are the defendant's

1   wishes in that regard?

2          MR. KAIZER:  We ask that he be readmitted

3   to bail, the bond -- on the bond that's extent,

4   which is $1 million secured by more than $1 million

5   in property signed by four financially responsible

6   sureties.  And I can make further arguments in

7   support thereof, Judge.

8          THE COURT:  Yes.  The way I'd like to

9   proceed, please, is let me first hear from the

10  Government, since it's the Government's burden.

11         MR. KAIZER:  Of course.

12         THE COURT:  And then I'll hear from you.

13         So before I do that, and I neglected to

14  ask, did Judge Ramos refer the arraignment to this

15  court or no?

16         MS. FOSTER:  Yes, your Honor.

17         THE COURT:  He did, okay.

18         So before we get to the bail argument, so

19  just to repeat, you've had an opportunity to review

20  the charges of the indictment with your client?

21         MR. KAIZER:  We've reviewed the indictment

22  and enter a plea of not guilty.

23         THE COURT:  All right.  So I'm going to

24  indicate on the disposition sheet that the defendant

25  has been arraigned and enters a plea of not guilty.

1          Okay.  So now I'll hear from the

2    Government, please, with respect to the reasons why

3    it seeks detention.

4          MS. FOSTER:  Yes, Your Honor.

5          So, just to start, the Government here is

6    entitled to a detention hearing under 18 United

7    States Code, Section 3142(f)(1), as there is -- if

8    the defendant is charged with a crime of violence as

9    well as an offense for which the maximum sentence is

10   life imprisonment or death, and also under

11   (f)(2)(A), based on the defendant's serious risk of

12   flight.  And here, there's a presumption that no

13   condition or combination of conditions will

14   reasonably assure the appearance of the community.

15   And that is because the defendant is charged under

16   Section 956(a) conspiracy to murder a person in a

17   foreign country.

18         This is a case where the risk of danger and

19   flight are extremely high.  At a high level, the

20   defendant is a Cuban citizen who orchestrated a

21   sophisticated murder-for-hire plot that resulted in

22   the death of his estranged husband.  He is now

23   charged with offenses for which the mandatory

24   punishment is life imprisonment or death.

25   Accordingly, the Government strongly believes that

1    there is no combination of conditions or any

2    conditions that would reasonably assure the safety

3    of the community or mitigate the serious risk of

4    flight in this case.

5            I want to start by just providing,

6    Your Honor, a brief overview of the nature of the

7    charges which, which the Government believes

8    demonstrates the real danger that the defendant

9    poses to the community.  The defendant is alleged to

10   have successfully enlisted an individual in Brazil

11   who is referred to in the indictment as cc-1, to

12   murder the defendant's estranged husband.

13           The defendant and his husband were engaged

14   in extremely contentious divorce proceedings at that

15   time.  And the defendant's husband, who was a

16   successful New York art gallery owner, frequently

17   visited Brazil.  The defendant accomplished this

18   plan through the use of technology and artifice.  He

19   used a stolen identity to set up a disguised phone

20   line to communicate with his coconspirator and he

21   sent multiple payments to the coconspirator over the

22   course of months.

23           (Interpreter clarification.)

24           MS. FOSTER:  He also, over the course of

25   these months, sent multiple payments to the

1    coconspirator, and each of these payments were made

2    in the name of an intermediary or in a stolen

3    identity.  So they were all intended to disguise the

4    nature of who had sent these payments.  And the

5    result of this plot was the violent death of the

6    victim, the defendant's estranged husband.  On

7    January 14, 2024, he was brutally murdered, stabbed

8    multiple times by the coconspirator.  And in the

9    days that followed, the defendant showed little

10   remorse.  Instead, he attempted and sent the

11   promised money that he had promised to his

12   coconspirator.

13          Now, any offense that involves murder,

14   obviously is very serious, and raises serious

15   concerns about a defendant's risk of danger to the

16   community.  But what is particularly concerning

17   about this offense is that the defendant carried

18   this out, carried out this deadly and violent act

19   that occurred in another country, basically from his

20   own home.

21          In other words, he used technology and he

22   was able to enlist another individual to brutally

23   murder his husband.  And because of the nature of

24   those facts, it is evident that home detention or

25   incarceration would do very little to mitigate the

1   risk of danger that the defendant's release poses

2   here.

3        The other fact that the Government has

4   uncovered through its investigation that also

5   underscores the serious risk of danger is that

6   the Government has found that the victim of this

7   instant offense isn't the only person that the

8   defendant has threatened.  The Government also has

9   evidence that the defendant used that same secret

10  phone line that he set up to communicate with the

11  coconspirator to threaten another individual who the

12  defendant believed had stolen something from him.

13  So these actions demonstrate that when someone

14  crosses the defendant, he will go to extreme lengths

15  to seek retribution.

16       And this is particularly concerning in this

17  case with respect to the Government's witnesses.

18  The Government's witnesses are all people that the

19  defendant knows.  He knows where they live, he knows

20  their family.  And so the Government has very

21  serious concerns, not only to the broader public,

22  but specifically to these witnesses, if the

23  defendant were released on any form of home

24  incarceration or detention.

25       Now, I also want to address the defendant's

1    risk of flight, which the Government also believes

2    is an independent basis here for detention.  The

3    defendant is a citizen of Cuba, a country from which

4    the United States is virtually unable to extradite

5    him and where he could completely avoid prosecution.

6    The defendant also is not only a citizen of Cuba,

7    but he has substantial ties to Cuba.  He has

8    multiple family members there.  He has a property

9    there, which we understand it is not in his name,

10   but he effectively controls.

11            And the Government also understands that

12   the defendant actually has shown a history of

13   wanting to go back to Cuba.  In fact, one of the key

14   reasons that was detailed is in the divorce

15   proceedings between him and the victim was their

16   disagreement about going back to Cuba.  The

17   defendant wanted to go back there and the victim did

18   not want to.  And that went to the length at which

19   the defendant actually disenrolled the child from

20   his school, noting that they were going to go back

21   to Cuba without the victim's consent.  And because

22   of these concerns throughout the divorce that the

23   defendant would leave to Cuba, the victim was given

24   custody of their child's passport.

25            And I want to also talk about sort of the

1  circumstances that were present in the prior bail

2  hearing and that also demonstrate the very serious

3  risk of flight that the defendant poses.  Back in

4  March of 2024, the defendant was charged and

5  arrested with passport fraud, and those charges

6  stemmed from the fact that almost immediately after

7  the victim was murdered, the defendant made repeated

8  attempts to get the child's passport from the

9  victim's custody.  So the same passport that the

10 victim had been given control of in order to prevent

11 any flight back to Cuba.  And eventually, after he

12 was repeatedly denied access to those passports, he

13 submitted a fraudulent passport application,

14 requesting a renewed passport for his son by falsely

15 making the representation that the passports were

16 lost.

17      And something that the Government has

18 discovered since then is that while he represented

19 that the reason that he needed these passports was

20 so that the son could go to a soccer camp, the

21 Government has found voice notes on the defendant's

22 phone that indicate that the real reason that he

23 wanted to get those passports was so that the

24 defendant and his son could go to Cuba.  And again,

25 this is within basically a month of the victim's

1    murder.

2            Moreover, when the defendant -- arrested

3    the defendant on that post court fraud charge back

4    in March, the Government basically found a home that

5    was ready for the defendant to leave on a dime.

6    There were multiple packed suitcases.  Next to the

7    defendant's bed was a bag that contained both of his

8    passports, including an envelope that had the words

9    14,000 written on it, and it contained a stack of

10   U.S. cash inside of it, and then the bag also

11   contained other currencies from other countries.

12   And the rest of the house also had additional

13   currencies scattered throughout it in multiple

14   different countries' currencies.

15           So these actions, each even prior to the

16   filing of the instant charges, underscore the very

17   significant risk of flight that the defendant's

18   release poses.  However, today there is even more

19   significant cause of concern which is that the

20   defendant now faces the most serious charges that he

21   could face.  These are charges for which he is death

22   eligible.  And so the fact that he had made efforts

23   to flee back then is only heightened the incentives

24   to flee currently.

25           And I want to just also address before I

1    sit down an argument that I anticipate the defendant

2    will make, which is that the defendant has already

3    been on home detention and had a million dollar bond

4    and has been largely compliant with those

5    conditions, which I imagine they will argue means

6    that those conditions are sufficient to continue

7    now.  However, that really -- the facts today are

8    completely different from when they were back then.

9    And again, what I was just saying is that

10   defendant's incentives to flee today are much

11   higher.

12          While it was true that back at that time he

13   was facing -- there was an arrest warrant for him in

14   Brazil on these same charges, as his defense counsel

15   noted at that prior hearing, he did not believe that

16   he would actually be extradited back to Brazil on

17   those charges.  He noted -- his defense attorney

18   noted that the Brazilian treaty with the U.S. does

19   not automatically allow for extradition of

20   U.S. citizens and that they would fight that

21   extradition.  And so up until that point there was

22   really a very good chance that the defendant was not

23   going to have to face any consequences for these

24   actions.  And as the judge, Magistrate Judge Stein,

25   noted at that prior bail hearing, any sentence that

1    the defendant would likely face on this passport

2    charge would be likely custodial.

3           But today the defendant's incentives are

4    basically 180 degrees different.  The defendant now,

5    as I mentioned, is subject to death-eligible

6    offenses, and the evidence is extremely strong.  The

7    Government has interviewed numerous witnesses in

8    this case, including in Brazil.  It has conducted

9    numerous search warrants and numerous subpoenas.

10   And so not only do these charges carry the most

11   serious penalties available, but there is a very

12   strong likelihood that the defendant will have to

13   face conviction on those charges.

14          Moreover, even while the defendant has been

15   on release with the passport fraud offense, his

16   conduct has shown a pattern of deceitfulness.  In

17   December of 2024, the defendant, while on pretrial

18   release, while on home detention, was arrested when

19   he told his pretrial officer he was going to mail a

20   package for his business and actually went next door

21   and stole goods from the store.

22          The defendant also, in connection with the

23   last bail hearing misrepresentations about his net

24   worth.  He claimed that he had about, like, $600 of

25   cash in his custody.  And as I just detailed for

1    Your Honor, what the Government found when they did

2    a search warrant on his premises back in March was

3    thousands of dollars of cash.

4         So the Government does not believe that the

5    defendant's history of release in the last few

6    months should bear at all on what his history of

7    release would be under the extremely changed fact

8    patterns that exist today.

9         And so, for all those reasons, the

10   Government agrees with pretrial that there is no

11   condition or combination of conditions that will

12   reasonably assure the appearance of the defendant or

13   secure the safety of the community.

14        Unless the Court has any questions.

15        THE COURT:  I don't.  Thank you.

16        Mr. Kaizer.

17        MR. KAIZER:  Thank you, Judge.

18        I see it fundamentally differently than the

19   Government.  When we appeared here one year ago,

20   there was a passport fraud for filing a passport

21   application in his son's name, alleging that the

22   prior passport was lost or stolen on a form.  And

23   that's, in fact, what it was.  It was not to be

24   found.  And we were facing an offense level of 8 at

25   that time, and the Government made these arguments,

1    and there were murder charges pending in Brazil at

2    that time.

3          So the Court had all these facts available

4    to it when it set bond in the amount of $1 million.

5    And that's been factored in.  Since that time, he

6    has been defending the charges in Brazil, and we've

7    been working with counsel in Brazil, and they've

8    been -- they've had a trial going on for the better

9    part of a year now with periodic hearings that we've

10   been participating in.  And the defendant has made

11   all the required appearances in Brazil remotely.  So

12   he's known about those charges.  He certainly knew

13   of the potential charges coming out of this district

14   regarding the same murder.  We advised him of same,

15   and yet he's still here, Your Honor.

16          He's still here with GPS monitoring.  He's

17   had his four closest friends and family members sign

18   the bond, put up property on Park Avenue worth over

19   a million and a half.  There are countless other

20   reasons that the Court sought to impose conditions

21   of bond that would permit him to be released to care

22   for his 14-year-old son.

23          He is the custodial parent of his

24   14-year-old son and that's who he lives with.  So I

25   don't know who's going to be -- who's going to take

1  care of his son with him in custody.

2          But there is GPS monitoring.  He is a

3  U.S. citizen.  He's been aware of the pendency of

4  these federal charges, these new potentially capital

5  charges for forever, since the March passport fraud

6  charge.

7          He was arrested today because pretrial

8  asked him to come down to check on his battery for

9  his ankle monitoring.  And he, in fact, came down.

10  He didn't even notify counsel, and he was arrested.

11  So that certainly evinces an intent to comply with

12  all court orders.

13          I understand the charges are the most

14  serious, but the fact that he's been on bond, the

15  fact that he's on monitoring, and the fact that he's

16  a U.S. citizen all merit in favor of his continued

17  release.  He's done nothing since that year that

18  bond has been imposed to give us any reason to think

19  he would go to Brazil.  He would have done that

20  already.  He's the custodial parent of his son.

21  He's not going to engage in flight.

22          Importantly, the December 24th charge

23  relates to shoplifting of a sweater from a thrift

24  store that he frequently goes to to give away

25  merchandise.  So we're handling that.  I expect that

1   to be dismissed.

2            For all these reasons, I submit that he's a

3   candidate for continued bond.  We've poured over a

4   lot of the evidence that the Government has provided

5   in the passport fraud.  We saw no evidence of the

6   payments and I'm sure the Government is going to

7   make that available.  We see no evidence of

8   fictitious names, fictitious phone numbers.  We've

9   poured over terabytes and terabytes of data and we

10   found nothing to support that.  And he's been

11   entirely compliant with orders of the Court and from

12   counsel and pretrial, and we submit that his

13   continued release would be in the interest of

14   justice.

15            Thank you, Judge.

16            THE COURT:  Just a procedural question.  In

17   the event that Mr. Sikkema were released, and I'm

18   not saying he's going to be, but the folks that

19   signed the bond get a chance to change their mind

20   given the fact that the charges have changed?  I

21   mean, how does that work?

22            I don't know.  I don't know who wants to

23   answer that.

24            MR. KAIZER:  I would imagine they would

25   have to be advised and continue to consent.

1          THE COURT:  Yeah.  Let me hear from the

2     Government as to anything else it wanted to say.

3          MS. FOSTER:  That's my understanding as

4     well.

5          The other thing I would just note is that

6     defense counsel said that, you know, these were

7     things that Judge Stein had considered in the

8     initial bail hearing.  But this is a line from --

9     and again, Judge Stein imposed strict conditions.

10    But this was an explicit line from his decision.  "I

11    appreciate that the Government would like the court

12    to view this as if it were a murder case, but I

13    can't do that and I can't rely on media reports

14    about that."

15         And the Government really didn't actually

16    proffer any facts about the murder at that time.

17    And so those prior conditions were based on the

18    passport fraud.  The Government didn't even, at that

19    time, argue risk of danger.  And so it's really not

20    correct that the judge viewed this in the same light

21    at all that we are making the argument on today and

22    the same facts.

23         The other thing I would just like to note

24    is that the Government understands that the

25    defendant has a cousin who lives with him at his

```
 1    residence and who will take custody of the child
 2    that he takes care of.  We also understand there's
 3    other individuals who may have an interest in the
 4    child, including the executor of the defendant -- or
 5    the victim's estate.  And so there will be an
 6    individual to take care of the child.
 7              Sorry, one other thing.  I would just like
 8    to note that the defense noted that they hadn't seen
 9    any evidence of any fictitious accounts.
10    Judge Ramos in this case entered a delayed discovery
11    order as to the murder.  So none of that has
12    actually been produced at this stage to the defense.
13              MR. KAIZER:  Judge.
14              THE COURT:  Go ahead.
15              MR. KAIZER:  I'm sorry.  I don't want to
16    beat a dead horse, but it's inconceivable that
17    $1 million dollar bond would be set on a offense
18    level 8, passport fraud for a U.S. citizen.  And so
19    I just note that.
20              THE COURT:  All right.  I'm going to take a
21    brief recess.  I'd ask pretrial Services to join me
22    in the back, please.
23              (Recess taken.)
24              THE DEPUTY CLERK:  All rise.
25              THE COURT:  Mr. Sikkema, I'm required under
```

1    the law to release you either with or without

2    conditions imposed unless I determine there are no

3    conditions that will reasonably assure your

4    appearance in court as required and the safety of

5    the community.  In making a bail determination, I'm

6    required to consider the following factors:  The

7    nature and circumstance, the offense charged, the

8    weight of the evidence against you, your history and

9    characteristics, and the nature and seriousness of

10   the danger to any person or the community that would

11   be posed by your release.

12           You've heard mention of presumption.  And

13   how that works is unlike last time on passport

14   fraud, this time there's probable cause to believe

15   that the crime for which you've been indicted --

16   because there's probable cause to believe it

17   occurred, there's a presumption of detention.  That

18   presumption is a rebuttable one and the Government

19   ultimately bears the burden of establishing by clear

20   and convincing evidence that you're a danger to the

21   community, or by a preponderance of the evidence

22   that you're a flight risk.

23           And how this case comes down to me is that

24   the presumption stands and you haven't rebutted it.

25   This is a very serious charge.  There's very strong

1    evidence.  So I think the Government's established

2    by clear and convincing evidence that dangerous

3    prong -- dangerousness prong.  And certainly by a

4    preponderance of the evidence, your prior use of

5    false documents, your ties with Cuba suggest to the

6    Court -- not suggest to the Court, lead the Court to

7    find by a preponderance of the evidence you're a

8    flight risk.

9           So for those reasons, I'm ordering the

10   defendant detained both on the grounds of risk of

11   flight and the ground of dangerousness.

12          Is there a conference schedule before

13   Judge Ramos?

14          MS. FOSTER:  The next conference date is

15   the final pretrial conference on April 17.

16          So I think defense counsel and I will need

17   to get together and propose a time to Judge Ramos to

18   have an initial comment.

19          THE COURT:  All right.  I'm just going to

20   list the 17th as a control date, but obviously

21   Judge Ramos will set his own schedule for

22   whatever --

23          (Interpreter clarification.)

24          THE COURT:  It was April --

25          MS. FOSTER:  17th.

```
1                THE COURT:  17th?

2                MS. FOSTER:  Yes.

3                THE COURT:  Yes.

4          All right.  Is there anything else that the

5    Government or defense would like to raise?

6                MS. FOSTER:  The Government would ask for

7    an exclusion of time through the date of the control

8    date.  That will give the government time to produce

9    this discovery relevant to these charges.  Time for

10   the defense to review that discovery and to make any

11   motions.

12               THE COURT:  Any objection?

13               MR. KAIZER:  No objection.

14               THE COURT:  All right.  So we're going to

15   exclude time through April 17th.

16          All right.  This matter is adjourned.

17   Thank you.

18               MR. KAIZER:  Judge.

19               THE COURT:  Oh, yes.  I'm sorry.

20               MR. KAIZER:  Sorry.

21               THE COURT:  Yes.

22               MR. KAIZER:  Two matters.  First, medical

23   order that I filled out for the defendant's

24   prescription.

25               THE COURT:  Yes.  Could you hand it to my
```

1     deputy, please?

2          MR. KAIZER:  And the agents have given the

3     prescriptions to the marshals.

4          THE COURT:  All right.  I'm affixing my

5     signature to this document.

6          And it looks like you've provided me with a

7     medical release form.

8          MR. KAIZER:  I have.

9          THE COURT:  Okay.

10          MR. KAIZER:  To forward to the DOP.

11          THE COURT:  Yes.  Which we will facilitate.

12          Okay.  What else?

13          MR. KAIZER:  We were retained on a passport

14     fraud case.  This is a case of an entirely different

15     nature, a capital case, in fact potentially.

16          My partner, Richard Levitt, is on the

17     capitol counsel in the Eastern District, and while

18     capitol counsel needs to be assigned here, we ask --

19     I ask that he be assigned CJA in this capital, not

20     in a capital capacity, but assigned under the CJA

21     Act to represent Mr. Sikkema on the new charges.

22          I don't know whether it's possible, but we

23     can thereafter assist in having -- finding capable

24     capital counsel to come on board.

25          So we're asking for appointment of

1    Mr. Levitt, who's on the Eastern District panel, to

2    represent him in this case pursuant to the CJA.

3              THE COURT:  I'll need to give that some

4    thought as to whether someone on -- that's not on

5    our panel can be appointed.

6              MR. KAIZER:  I understand.  And he filled

7    out a financial affidavit, which we submitted to the

8    Court.

9              THE COURT:  No, I understand that, but

10   you're asking to have somebody who's not on our

11   panel appointed as CJA counsel.

12             MR. KAIZER:  Correct.

13             THE COURT:  What I'd ask that you do or

14   direct that you do is file a letter application to

15   the Court, and I'll address it.  Obviously, I need

16   to make inquiry with respect to whether that can be

17   accommodated or not.

18             MR. KAIZER:  Okay.  Thank you, Judge.

19             THE COURT:  So if you just send the

20   letter -- if you go on my individual rules, you'll

21   see there's a chambers email address where you can

22   direct that letter.

23             MR. KAIZER:  Thank you, Judge.

24             THE COURT:  Okay.  You're welcome.

25             Anything else?

1            MS. FOSTER:  No, Your Honor.  Thank you.

2            MR. KAIZER:  One moment, Judge.

3            THE COURT:  Okay.

4            MR. KAIZER:  Thank you, Judge.

5            THE COURT:  All right, thank you.  This

6    matter is adjourned.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    C E R T I F I C A T E

2

3        I, Marissa Lewandowski, certify that the

4   foregoing transcript of proceedings in the case of

5   USA v. Sikkema, Docket #24-cr-00227, was

6   prepared using digital transcription software and is

7   a true and accurate record of the proceedings.

8

9

10   Signature   __*Marissa Lewandowski*__

11                    Marissa Lewandowski

12

13   Date:      May 1, 2025