UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x
                                                                   :

UNITED STATES OF AMERICA       :

             - v. -                         :         S1 24 Cr. 227 (ER)

DANIEL SIKKEMA,                   :

                   Defendant.     :

------------------------------------------------------x


# THE GOVERNMENT'S MEMORANDUM OF LAW
# IN OPPOSITION TO THE DEFENDANT'S PRETRIAL MOTIONS


JAY CLAYTON
United States Attorney
Southern District of New York

Meredith Foster
Remy Grosbard
Assistant United States Attorneys

Chelsea Schinnour
Trial Attorney
- *Of Counsel* –

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................. 1

BACKGROUND .............................................................................................................................. 2

    A.  The Original Indictment............................................................................................. 2

    B.  The Superseding Indictment ..................................................................................... 3

ARGUMENT .................................................................................................................................... 4

I.  The Defendant's Motion to Dismiss the Charge of Passport Fraud Should Be Denied for the Same Reasons it Was Previously. ............................................................................................ 4

II.  The Defendant Is Plainly Not Entitled to the Letters Rogatory That He Seeks ...................... 5

    A.  Applicable Law ......................................................................................................... 5

    B.  Discussion ................................................................................................................. 8

        1. The Tapes and Transcripts of the Brazilian Proceeding Constitute Inadmissible Hearsay, Which May Not Be Sought Through Letters Rogatory .................................. 9

        2. The Request for the Victim's Cellphone Violates Rule 17(c) and Should be Denied ................................................................................................................................. 10

        3. The Court Should Reject the Defendant's Request to Depose Unidentified Witnesses ............................................................................................................................. 14

CONCLUSION............................................................................................................................... 16

## **TABLE OF AUTHORITIES**

**Cases**

*United States v. Avenatti*,
  2020 WL 86768 (S.D.N.Y. Jan. 6, 2020). .................................................................................. 7

*United States v. Cherry*,
  876 F. Supp. 547 (S.D.N.Y. 1995) ............................................................................... 6, 7, 9, 12

*United States v. Al Fawwaz,*
  2014 WL 627083 (S.D.N.Y. Feb. 18, 2014) ............................................................................. 8

*United States v. Blakstad,*
  2020 WL 5992347 (S.D.N.Y. Oct. 9, 2020) ...................................................................... 6, 12

*United States v. Carter,*
  2025 WL 3524288 (D. Me. Dec. 9, 2025) ........................................................................ 11, 12

*United States v. Cohen*,
  260 F.3d 68 (2d Cir. 2001) ........................................................................................................ 8

*United States v. Coriaty,*
  2000 WL 1099920 (S.D.N.Y. 2000) ........................................................................................ 7

*United States v. Dillman*,
  15 F.3d 384 (5th Cir. 1994) ....................................................................................................... 8

*United States v. Drogoul*,
  1 F.3d 1546 (11th Cir. 1993) .................................................................................................... 8

*United States v. Gotti*,
  457 F. Supp. 2d 411 (S.D.N.Y. 2006) ................................................................................... 2, 3

*United States v. Gross*,
  24 F.R.D. 138 (S.D.N.Y. 1959) ................................................................................................ 7

*United States v. Ismaili*,
  828 F.2d 153 (3d Cir. 1987) ............................................................................................... 8, 15

*United States v. Jesenik,*
  2023 WL 1879682 (D. Or. Feb. 10, 2023) ......................................................................... 11-12

*United States v. Johnpoll*,
  739 F.2d 702 (2d Cir. 1984) ............................................................................................... 8, 15

*United States v. Kelley*,
  36 F.3d 1118 (D.C. Cir. 1994) .................................................................................................. 8

*United States v. Korogodsky*,
  4 F. Supp. 2d 262 (S.D.N.Y. 1998) ....................................................................................... 6, 7

*United States v. Lopez,*
    2021 WL 4033886 (E.D.N.Y. Sept. 3, 2021) ............................................................. 6

*United States v. Mendinueta-Ibarro,*
    956 F. Supp. 2d 511 (S.D.N.Y. 2013) ..................................................................... 7

*United States v. Murray,*
    297 F.2d 812 (2d Cir. 1962) .................................................................................... 6

*United States v. Pierre,*
    2023 WL 7004460 (S.D.N.Y. Oct. 24, 2023) .......................................................... 7

*United States v. Purin,*
    486 F.2d 1363 (2d Cir. 1973) .................................................................................. 6

*United States v. Rich,*
    1984 WL 845 (S.D.N.Y. Sept. 7, 1984) ................................................................... 6

*United States v. Rosenstein,*
    474 F.2d 705 (2d Cir. 1973) .................................................................................... 8

*United States v. Shrader,*
    2010 WL 2836752 (S.D.W. Va. July 20, 2010) ............................................... 12-13

*United States v. Stein,*
    482 F. Supp. 2d 360 (S.D.N.Y. 2007) ................................................................... 15

*United States v. Weisberg*
    2010 WL 5027537 (E.D.N.Y. Dec. 3, 2010) ........................................ 5, 6, 8, 9, 10, 11, 13

*United States v. Whiting,*
    308 F.2d 537 (2d Cir. 1962) ........................................................................ 7, 8, 15

*United States v. Xu,*
    2024 WL 4504352 (S.D.N.Y. Oct. 16, 2024) ........................................................ 11

*United States v. Hoskins,*
    2015 WL 4874921 (D. Conn. Aug. 14, 2015) ............................................. 5, 6, 8, 10

**Statutes**

18 U.S.C. § 2 ....................................................................................................... 2, 3

18 U.S.C. § 1542 ................................................................................................... 2, 3

Fed R. Cr. P. 15 ............................................................................... 1, 4, 5, 6, 7, 8, 9, 15

Fed R. Cr. P. 17 ................................................................... 6, 7, 8, 9, 10, 11, 12, 13

**PRELIMINARY STATEMENT**

The Government respectfully submits this memorandum of law in opposition to the defendant Daniel Sikkema's (1) motion reasserting his previously denied motion to dismiss the passport fraud charge in Count Four of the Superseding Indictment; and (2) motion for letters rogatory to Brazilian authorities to obtain materials created and held in connection with a pending criminal proceeding in Brazil. (Dkt. 53 ("Def. Br."); *see* Dkts. 51-52). The defendant also seeks letters rogatory to obtain depositions for an unspecified number of witnesses to be selected at his discretion. (*Id.*).

The motion to dismiss the passport fraud count should be rejected for the same reasons the Court explained in December 2024, when it rejected the exact same argument as to the prior Indictment. The Court should also reject the defendant's attempt to conduct a fishing expedition into Brazil's criminal proceedings related to the murder in this case, which includes the cellphone used by the victim (the "Victim") that Brazilian authorities have already determined they cannot access. Nor should the Court countenance the defendant's request for blanket authority to depose witnesses abroad, without even attempting to satisfy Rule 15. In short, the requested letters rogatory seek material to which defense counsel is plainly not entitled under the Federal Rules of Criminal Procedure.

The defendant also requests that the Court set certain pretrial disclosure deadlines. (Def. Br. at 9-11). The parties are still conferring about the defendant's request for such deadlines. Because these conferrals remain ongoing, the parties respectfully request that the Court permit them to file a joint status report in a week, *i.e.,* by January 29, 2026, setting forth either the parties' agreement on these deadlines or their competing proposals.

## BACKGROUND

### A. The Original Indictment

On April 12, 2024, a grand jury in this District returned Indictment 24 Cr. 227 (ER) (Dkt. 8 (the "Original Indictment")), charging the defendant with one count of passport fraud, in violation of 18 U.S.C. §§ 1542 and 2 (the "Passport Fraud Count"). The Passport Fraud Count alleged that, on or about February 8, 2024, the defendant submitted an application for a passport for his son, in which he stated that his son's passport book was lost, while knowing that statement to be false. (Original Indictment ¶ 1).

On November 4, 2024, the defendant filed a motion to dismiss the Original Indictment. (Dkts. 20-21). In that motion, the defendant argued that the "undisputed facts" set out in the Complaint and Original Indictment did "not make out the offense of filing a false passport application," (Dkt. 21 at 7), citing *United States v. Gotti*, 457 F. Supp. 2d 411, 421 (S.D.N.Y. 2006), for the proposition that, in rare circumstances, where the Government has made a full proffer of its evidence, the Court may address the sufficiency of the evidence on a pretrial motion to dismiss an indictment. (*Id.* at 6). The Government opposed the defendant's motion to dismiss. (Dkt. 22 at 4-5). The Government argued that, contrary to the defendant's claims, the Complaint and Original Indictment did not contain a "full proffer" of the Government's evidence and therefore it was not the "'rare circumstance' where the 'government 'has made what can fairly be described as a full proffer of the evidence it intends to present at trial,' and the sufficiency of the evidence may be addressed at the motion to dismiss stage." (*Id.* (quoting *Gotti*, 457 F. Supp. 2d at 421)). Moreover, because the allegations in the Original Indictment, if accepted as true, alleged each element of passport fraud, there was no basis to dismiss the Passport Fraud Count. (*Id.*).

On December 11, 2024, this Court issued an Opinion and Order, denying the defendant's

motion to dismiss. (Dkt. 24 at 6 (the "December 2024 Opinion")). The Court stated that "[a]t this stage, the Government is only required to allege each element of the charged offense" and the "Government has done so." (*Id.*). The Court further held that *Gotti* was inapposite because the outcome in that case "was contingent on the Government having made a *full* proffer of the evidence at two previous trials," whereas, here, the defendant's motion to dismiss is "based solely on the Government's Complaint and Indictment," which "by their nature, do not provide the defendant with all the facts and evidence that the Government intends to use to prove its case." (*Id.*).

### B. The Superseding Indictment

On February 11, 2025, a grand jury in this District returned Superseding Indictment S1 24 Cr. 227 (ER) (Dkt. 27 (the "Superseding Indictment" or "Ind.")), charging the defendant with the Passport Fraud Count along with three additional counts—one count of murder-for-hire conspiracy resulting in death, in violation of 18 U.S.C. §§ 1958 and 2, one count of murder-for-hire resulting in death, in violation of 18 U.S.C. §§ 1958 and 2, and one count of conspiracy to murder and maim a person in a foreign country, in violation of 18 U.S.C. §§ 956(a)(1), (a)(2)(A).

These additional counts arose from the following conduct, as alleged in the Superseding Indictment: in or about 2023, the defendant and Alejandro Prevez ("Prevez") agreed that the defendant would pay Prevez to kill the defendant's estranged husband (the "Victim") in Brazil. (Ind. ¶ 1). In furtherance of that plan, the defendant, while in Manhattan, sent multiple payments to Prevez and to his romantic partner, a woman in Cuba, between mid-2023 through January 2024. (*Id.* ¶ 2). On or about January 14, 2024, Prevez snuck into the Victim's townhouse in Rio de Janeiro, Brazil and murdered the Victim. (*Id.* ¶ 3). On or about January 18, 2024, Brazilian law enforcement arrested Prevez for the Victim's murder. (*Id.* ¶ 5).

Brazilian authorities subsequently charged Prevez and the defendant with conspiracy to

3

commit murder and other charges related to the Victim's murder, and criminal proceedings remain ongoing in Brazil (the "Brazilian Criminal Proceedings").

## ARGUMENT

The defendant's motion seeks three forms of relief, all of which are meritless for the reasons explained below.

*First*, "in an abundance of caution," the defendant repeats his prior motion to dismiss the Passport Fraud Count. (Def. Br. at 1). The Court should reject this motion for the same reasons that it did so previously.

*Second*, the defendant moves for letters rogatory for a host of materials and testimony located abroad. These requests should be denied. Letters rogatory, even when authorized by a court, entitle a defendant only to evidence to which he would otherwise be entitled it if it were located in the United States. And, here, the defendant is not entitled to any of the materials and testimony that he seeks under Federal Rules of Criminal Procedure 15 and 17(c), which apply in equal force to letters rogatory in criminal cases.

*Finally*, the defendant seeks to impose a pretrial disclosure schedule, which the parties are continuing to negotiate. The Court should defer ruling on the request.

### I. The Defendant's Motion to Dismiss the Charge of Passport Fraud Should Be Denied for the Same Reasons it Was Previously

The Court can easily dispense with the defendant's three-sentence reassertion of his motion to dismiss the Passport Fraud Count. (Def. Br. at 1). As detailed above, the defendant already moved to dismiss the Passport Fraud Count in the Original Indictment, which this Court denied. (Dkt. 24 at 6). The defendant's motion offers no basis for a different result. The Passport Fraud Count in the Superseding Indictment is identical to the Passport Fraud Count in the Original Indictment. Further, in re-raising this motion, the defendant does not make any new arguments

4

or argue that the Court overlooked any relevant facts or case law in the December 2024 Opinion. (Def. Br. at 1). Instead, the defendant notes that he is raising this argument again "[i]n an abundance of caution" and to preserve it "for further review, if necessary." (*Id.*). The Court should therefore deny the defendant's motion to dismiss the Passport Fraud Count in the Superseding Indictment for the same reasons laid out in its December 2024 Opinion.

**II. The Defendant Is Plainly Not Entitled to the Letters Rogatory That He Seeks**

The defendant next asks the Court to issue multiple letters rogatory to obtain materials created and held in connection with the Brazilian Criminal Proceedings, including transcripts and recordings of testimony (all of which would be inadmissible hearsay), and the Victim's cellphone, which Brazilian authorities have already confirmed is inaccessible. As explained below, not only are the defendant's proffered reasons for obtaining such materials speculative, but the defendant has not offered any basis for their admissibility. As such, the Court should deny the defendant's requests for letters rogatory.

**A. Applicable Law**

Although letters rogatory allow a defendant to request international, as opposed to domestic, records, they do not otherwise expand the type of discovery a defendant may lawfully obtain. In other words, "letters rogatory are simply a means to obtain discovery to which a party is otherwise entitled." *United States v. Weisberg* ("*Weisberg I*"), No. 08 Cr. 347 (RML), 2010 WL 5027537, at *2 (E.D.N.Y. Dec. 3, 2010). Accordingly, "[t]he standard for issuance of a letter rogatory is the same as if the evidence were located in the United States." *United States v. Hoskins*, No. 12 Cr. 238 (JBA), 2015 WL 4874921, at *5 (D. Conn. Aug. 14, 2015); *see also, e.g.*, *United States v. Weisberg* ("*Weisberg II*"), No. 08 Cr. 347 (RML), 2011 WL 1327689, at *9 (E.D.N.Y. Apr. 5, 2011) ("To the extent Weisberg's requests would be impermissible under Rule 17(c), they

5

are impermissible in the context of letters rogatory."); *cf. United States v. Korogodsky*, 4 F. Supp. 2d 262, 265 (S.D.N.Y. 1998) (applying Rule 15 standard for letters rogatory seeking deposition in a foreign country).

Thus, to obtain certain physical or documentary evidence located abroad through a letter rogatory, the defendant "must satisfy the requirements of [Federal Rule of Criminal Procedure] 17 and *Nixon*." *Hoskins*, 2015 WL 4874921, at *5 (citing *United States v. Nixon*, 418 U.S. 683, 700 (1974)). To satisfy these requirements, the defendant must "clear three hurdles: (1) relevancy; (2) admissibility; (3) specificity." *United States v. Blakstad*, No. 19 CR. 486 (ER), 2020 WL 5992347, at *11 (S.D.N.Y. Oct. 9, 2020) (quoting *United States v. Nixon*, 418 U.S. 683, 700 (1974)). Failure to meet these standards requires denial of a defendant's request. *See e.g.*, *Weisberg I*, 2010 WL 5027537, at *2 (denying defendant's requests for letters rogatory for failing to satisfy Rule 17(c) standards); *United States v. Lopez*, No. S3 15 Cr. 252 (PKC), 2021 WL 4033886, at *1 (E.D.N.Y. Sept. 3, 2021) (finding that requested subpoena and letter rogatory were "overbroad and violate[d] the fundamental principle that Rule 17 is not a tool to engage in 'a general "finishing expedition"'").

The admissibility requirement of Rule 17(c), which is applicable to the defense request for the Victim's cellphone and transcripts and recordings, requires "a showing that the materials sought are currently admissible in evidence." *United States v. Rich*, No. S 83 CR. 579 (SWK), 1984 WL 845, at *3 (S.D.N.Y. Sept. 7, 1984); *see also United States v. Purin*, 486 F.2d 1363, 1368 (2d Cir. 1973); *United States v. Murray*, 297 F.2d 812, 821 (2d Cir. 1962). As a result, documents that constitute inadmissible hearsay and are inadmissible at trial cannot be sought through a Rule 17(c) subpoena. *See United States v. Cherry*, 876 F. Supp. 547, 553 (S.D.N.Y. 1995). Likewise, documents that are sought for impeachment purposes are not evidentiary under Rule 17(c). *See Blakstad*, 2020 WL 5992347, at *11 ("Courts have consistently interpreted the

6

admissibility standard of Rule 17(c) to preclude production of materials whose evidentiary use is limited to impeachment."); *Cherry*, 876 F. Supp. at 553. Thus, Rule 17(c) differs from the civil discovery rules that permit the issuance of subpoenas to seek production of documents or materials that, although themselves not admissible, may lead to admissible evidence. *See Cherry*, 876 F. Supp. at 552. Furthermore, Rule 17(c) cannot be used "to obtain leads as to the existence of additional documentary evidence or to seek information relating to the defendant's case." *United States v. Gross*, 24 F.R.D. 138, 141 (S.D.N.Y. 1959). "This type of discovery, permissible under the Federal Rules of Civil Procedure, has not been authorized for criminal trials." *Id.*; *accord United States v. Coriaty*, No. 99 Cr. 1251 (DAB), 2000 WL 1099920, at *7 (S.D.N.Y. 2000).

In addition, "*Nixon's* 'specificity requirement . . . ensures that a Rule 17(c) subpoena will not be used as a fishing expedition to see what may turn up.'" *United States v. Pierre*, No. 22 CR. 19 (PGG), 2023 WL 7004460, at *23 (S.D.N.Y. Oct. 24, 2023) (quoting *United States v. Avenatti*, No. 19 CR. 373 (PGG), 2020 WL 86768, at *4 (S.D.N.Y. Jan. 6, 2020)). The request thus must "be able to 'reasonably specify the information contained or believed to be contained in the documents sought' rather than 'merely hop[e] that something useful will turn up.'" *Avenatti*, 2020 WL 86768, at *4. Subpoenas seeking "any and all" materials, without mention of any specific admissible evidence, are routinely quashed by courts in this District. *See, e.g.*, *United States v. Mendinueta-Ibarro*, 956 F. Supp. 2d 511, 513 (S.D.N.Y. 2013).

Likewise, to depose witnesses abroad, as the defendant here requests, a moving party must satisfy the standards laid out in Rule 15. *See Korogodsky*, 4 F. Supp. 2d at 265; *see United States v. Whiting*, 308 F.2d 537, 541 (2d Cir. 1962). Federal Rule of Criminal Procedure 15 allows for pretrial depositions in criminal cases only in "exceptional circumstances and in the interest of justice." Fed. R. Crim. P. 15(a)(1); *see United States v. Drogoul*, 1 F.3d 1546, 1551 (11th Cir.

7

1993) ("Depositions generally are disfavored in criminal cases"). The burden is on the party seeking a Rule 15 deposition to establish that such exceptional circumstances exist and that injustice will result if the motion is denied. *See Whiting*, 308 F.2d at 541; *see also United States v. Kelley*, 36 F.3d 1118, 1124 (D.C. Cir. 1994). Specifically, "[a] movant must show that (1) the prospective witness is unavailable for trial, (2) the witness' testimony is material, and (3) the testimony is necessary to prevent a failure of justice." *United States v. Cohen*, 260 F.3d 68, 78 (2d Cir. 2001); *see also United States v. Johnpoll*, 739 F.2d 702, 709 (2d Cir. 1984); *United States v. Rosenstein*, 474 F.2d 705, 715 (2d Cir. 1973). The mere fact that a purported witness resides in a foreign country does not demonstrate his or her "unavailability" for Rule 15 purposes. *See United States v. Ismaili*, 828 F.2d 153, 160 (3d Cir. 1987) (holding that unavailability requirement not satisfied for witnesses residing in Morocco).

All of these standards under Rule 15 and Rule 17 apply to letters rogatory. *See, e.g.*, *United States v. Al Fawwaz*, No. S7 98 Cr. 1023 (LAK), 2014 WL 627083, at *2 (S.D.N.Y. Feb. 18, 2014); *Weisberg I*, 2010 WL 5027537, at *2. Even when these standards are met, it is in the district court's discretion to issue letters rogatory. *See Hoskins*, 2015 WL 4874921, at *5; *see also United States v. Dillman*, 15 F.3d 384, 389 (5th Cir. 1994). A court therefore may deny a request for letters rogatory where the defendant has not shown that the evidence cannot be obtained by other means or given any indication that the receiving country is likely to timely comply with the requests. *See Weisberg II*, 2011 WL 1327689, at *9; *Weisberg I*, 2010 WL 5027537, at *2.

### B. Discussion

The defendant asks this Court to issue letters rogatory requesting that Brazilian authorities turn over to the defendant: (1) tapes and transcripts of all witness testimony in the Brazilian Criminal Proceedings relating to the Victim's murder; and (2) the Victim's cellphone, which

8

Brazilian authorities seized as part of their investigation into the Victim's murder but were unable to access. (Def. Br. at 2-9). In addition, the defendant asks this Court to provide him free rein to conduct depositions abroad of unspecified witnesses based on his "belie[f] there will be several witnesses whose testimony [the defense] will need to generate if those witnesses cannot otherwise be required to attend trial in the United States." (*Id*. at 2). Because the defendant has not shown his entitlement to any of this material under Rules 15 and 17—nor could he—these requests should be denied.

        1.    The Tapes and Transcripts of the Brazilian Proceeding Constitute Inadmissible Hearsay, Which May Not Be Sought Through Letters Rogatory

The first request—for tapes and transcripts of the Brazilian Criminal Proceedings—constitutes a fishing expedition and on its face seeks inadmissible hearsay, which could not be entered into evidence at trial. Although the defense claims such proceedings "are of obvious relevance," the defendant does not list any specific materials he seeks, but instead just speculates that these materials "can shed light on the means and methods involved in perpetrating [the] murder," "may corroborate our defense theories" and "will likely cash doubt on some allegations made by" Prevez. (Def. Br. at 2, 5-6). In other words, the defense is simply fishing for information it may, or may not, find useful. The defendant also specifically seeks such records for potential impeachment, which is not a permissive purpose for issuance of a Rule 17 subpoena. *See Cherry*, 876 F. Supp. at 553 (quashing Rule 17(c) subpoena that sought documents constituting inadmissible hearsay that would be used only for impeachment); *id.* at 552-553 (collecting cases). Because the defendant would not be entitled to obtain tapes and transcripts of domestic judicial proceedings through the use of a Rule 17(c) subpoena, the defendant's request to seek these records from a foreign court should be denied. *See Hoskins*, 2015 WL 4874921, at *5 ("The standard for issuance of a letter rogatory is the same as if the evidence were located in the United States[.]").

9

The defendant's request should also be denied because—contrary to the defendant's representation (*see* Def. Br. at 7)—tapes and transcripts from the Brazilian Criminal Proceedings can be obtained by other means. *See Weisberg I*, 2010 WL 5027537, at *2 (requiring the defendant, in addition to satisfying the Rule 17(c) requirements, "to show that the evidence sought [through the letters rogatory] cannot be obtained through other means"). The Government has already requested from Brazil, pursuant to a Mutual Legal Assistance Treaty ("MLAT") request, copies of all available transcripts and/or recordings of witness testimony in the Brazilian Criminal Proceedings relating to the murder of the Victim. As the Government informed defense counsel in an email on December 19, 2025, it will provide any such materials in its possession to defense counsel pursuant to its discovery obligations.[1] Thus, the defendant's request for letters rogatory to obtain the very same material should separately be denied on this basis.

2. The Request for the Victim's Cellphone Violates Rule 17(c) and Should be Denied

The defendant's second request—for the *entire* physical cellphone of the Victim, which is currently in the possession of Brazilian authorities—fares no better and should be denied for multiple reasons.

*First*, the request is an obvious fishing expedition that fails to meet the specificity requirements of Rule 17(c). To date, the contents of the Victim's cellphone are unknown to both the Government and the defense, because—as the defendant concedes—Brazilian authorities were unable to extract the Victim's cellphone. Yet, according to the defendant, he is entitled to the

---

[1] The defendant claims in a footnote that the Government told defense that they had requested such materials from Brazilian authorities, but would not "use [an] MLAT to do so." (*See* Def. Br. at 4 n.2). That is incorrect. The Government merely stated that it had requested or would request these materials prior to trial, and made no representation about whether or not it had used an MLAT to do so.

10

Victim's cellphone because he *may* be able to extract it and it *may* reveal helpful (yet unspecified) evidence about "communications, travel, and relationships in the period leading up to Mr. Sikkema's killing," including "[e]vidence of prior contact—or lack thereof—between [the Victim and his murderer, Alejandro Prevez]." (Def. Br. at 6).

As an initial matter, the contents of Prevez's cellphone and other electronic accounts and devices of Prevez and the defendant have been produced in discovery and provide no basis (based on the Government's review) to support the defendant's conjecture that the Victim and Prevez were in contact during the relevant time period leading up to the murder. In any event, the defendant's sweeping request for the Victim's cellphone is precisely the type of fishing expedition for unknown evidence that Rule 17's specificity requirement prohibits. *See, e.g.*, *Weisberg I*, 2010 WL 5027537, at *2 ("If the moving party cannot reasonably specify the information contained or believed to be contained in the documents sought but merely hopes that something useful will turn up, the specificity requirement is not met and the requests will be denied."); *United States v. Xu*, No. 23 Cr. 133 (JMF), 2024 WL 4504352, at *2 (S.D.N.Y. Oct. 16, 2024) (quoting *Mendineuta-Ibarro*, 956 F. Supp. 2d at 513) ("Rule 17 subpoenas . . . which seek[] any and all materials, without mention of specific admissible evidence are precisely what justify the inference that the defense is engaging in the type of fishing expedition prohibited by *Nixon*."). It is therefore no surprise that courts routinely deny similar defense requests for subpoenas to search the personal electronic devices of victims or witnesses in the United States. *See, e.g.*, *United States v. Carter*, No. 25 Cr. 89 (JAW), 2025 WL 3524288, at *4 (D. Me. Dec. 9, 2025) ("Mr. Carter is not entitled to require [minor victims to] simply turn over their cellphones to his attorneys for their inspection"); *United States v. Jesenik*, No. 20 Cr. 228 (SI), 2023 WL 1879682, at *4 (D. Or. Feb. 10, 2023) (request for all materials located on mobile device that relates to allegations in case "is a broad fishing

11

expedition, cast in the hope that something useful will turn up. It is, thus, not within the proper scope of a Rule 17(c) subpoena."). Because such a request would not be proper if made for a cellphone within the United States, it should not be granted here where the cellphone is located in a foreign jurisdiction.

*Second*, in addition to being overly speculative, the request for the Victim's cellphone fails to meet the admissibility requirement of Rule 17(c). For example, the defendant states that he is interested in the Victim's communications leading up to the date of the Victim's murder. (Def. Br. at 6). But any such communications offered by the defense would be inadmissible hearsay. *See Cherry*, 876 F. Supp. at 553. Further, while the defendant appears to hope that he will find communications between the Victim and Prevez on the Victim's device so that he may use them to impeach Prevez if he testifies (although no such communications appear to have been located on Prevez's phone), (Def. Br. at 6), impeachment evidence is not the proper basis for the issuance of letters rogatory. *See Blakstad*, 2020 WL 5992347, at *11.

*Third*, the defendant's request for the Victim's cellphone should be denied because of the significant invasion of privacy that would follow from permitting the defendant to rifle through the entire contents of the Victim's cellphone. *See Carter*, 2025 WL 3524288, at *4 (denying subpoena to search phone where "the Defendant has made no suggestion as to how as a practical matter, the Court could protect the victims' privacy rights in attempting to provide him with speculative evidence."); *see also United States v. Shrader*, No. 09 Cr. 270, 2010 WL 2836752, at *4 (S.D.W. Va. July 20, 2010), *aff'd*, 716 F. Supp. 2d 464 (S.D.W. Va. 2010) ("Courts have often considered privileges and privacy interests in determining whether or not Rule 17(c) subpoenas should be quashed"). This privacy invasion would harm not only the deceased Victim's privacy interests, but also those of his family members and any other third parties whose information and

12

communications may be contained on the device. In particular, the Victim's cellphone may contain medical information or other sensitive information of third parties, which has no relevance to the case. The defense, however, has made no effort to tell the Court how it plans to search through the phone for speculative evidence without coming across wide swaths of personal information to which the defendant is not entitled. Such privacy interests, combined with the entirely speculative nature of the request, reinforce the unreasonable nature of the request and why the requested letter rogatory for the Victim's cellphone should be denied.

*Fourth*, in addition to being legally improper under Rule 17(c), the Court should deny the defendant's request to issue letters rogatory, because the defendant provides no reason to believe that the receiving country, Brazil, will agree to comply with the request. *See Weisberg II*, 2011 WL 1327689, at *9 (denying request for letters rogatory where defendant failed to show that "the receiving countries are likely to timely comply" with the letters rogatory). Without any such assurance, there is no reason to believe that the "consuming and uncertain letter rogatory process"—which would require significant Court, international, and U.S. Government resources—will result in the production of any of the discovery the defendant seeks. *See Weisberg I*, 2010 WL 5027537, at *2. Moreover, Brazil has an active criminal case against both Prevez and the defendant for the murder of the Victim, and the Victim's cellphone is physical evidence that was seized by Brazilian authorities as part of that case.[2] Defense counsel has provided no reason to believe that Brazil, a separate sovereign with its own investigative equities in enforcing its criminal laws, would ship physical evidence from a *pending* criminal case—with no foreseeable end date—to

---

[2] The defendant notes that the Brazilian Criminal Proceedings are currently stayed. (Def. Br. at 2). The Government is seeking to confirm whether the case against both the defendant and Prevez in Brazil is stayed or whether it is just stayed against the defendant.

13

defense counsel in the United States for the defendant's unfettered access.

Further, even in the unlikely event that Brazil were to ship the Victim's cellphone to the defendant in the United States, there is little reason to believe the defendant could successfully extract the contents of the phone. As defense counsel notes, the Brazilian government tried to extract the cellphone but was unable to do so based on the model of the phone and the fact that it was passcode protected. (Def. Br. at 6 n.4). And, as the Government informed defense counsel,[3] the Government spoke to a digital forensic examiner at the Federal Bureau of Investigation ("FBI") about the possibility of extracting the device without the passcode, and the examiner informed the Government that, based on the model of the phone, the examiner would likely have trouble extracting much, if any, content from the device. Defense counsel has not provided any reason for why they would—unlike Brazilian and likely U.S. law enforcement—be able to successfully extract this device. The Court therefore may exercise its discretion to reject this request on this basis as well.

       3.     The Court Should Reject the Defendant's Request to Depose Unidentified Witnesses

The defendant also asks this Court to provide him with *carte blanche* to depose certain unnamed witnesses abroad based on his "determination of whose testimony needs to be taken." (Def. Br. at 2-3). This extraordinary request should be denied. As detailed above, before a defendant may be permitted to depose witnesses abroad, he bears the burden to demonstrate that

---

[3] On or about November 4, 2025, in response to a question from defense counsel about whether the Government intended to take possession and examine the contents of the Victim's cellphone, the Government responded the following: "We do not have any intention of attempting to take possession of the phone at this time. Our understanding is that based on, among other things, the model of the phone and the fact that it was passcode protected, Brazil was not able to extract content data from the phone. We further understand that we also would likely have trouble extracting much content from the device."

14

exceptional circumstances exist and that injustice will result. *See Whiting*, 308 F.2d at 541. Here, the defendant does not even identify what witnesses he intends to depose or how many depositions he seeks to take, let alone explain why this standard is met for each of these witnesses. Further, the mere fact that the witnesses are located abroad and cannot be compelled to testify is not sufficient. *See Ismaili*, 828 F.2d at 160. The defendant must make some showing that the foreign-based witness is truly unable or unwilling to come to the United States to testify and that the moving party has made a "good faith effort to produce the person to testify at trial." *Johnpoll*, 739 F.2d at 709; *United States v. Stein*, 482 F. Supp. 2d 360, 365 (S.D.N.Y. 2007) (denying a Rule 15 motion because, inter alia, "[t]he Court thus is unable to determine whether [the movant] has made the requisite 'good-faith effort to produce the person to testify at trial'" (quoting *Johnpoll*, 739 F.2d at 709)); *see also United States v. Oudovenko*, No. 00 Cr. 1014 (JG), 2001 WL 253027, at *2 (E.D.N.Y. Mar. 7, 2001) ("[Defense] counsel's affirmation [that the witnesses would not voluntarily travel to the United States to testify at the trial] fails to establish that he or [the defendant] made a good faith effort to secure the presence of these witnesses at trial, such as by offering to pay their travel expenses."). The defendant has not done so here and thus this motion should be dismissed.[4]

---

[4] Given the anticipated litigation over this issue, the Government has requested that the defense propose a date to file any motions to conduct Rule 15 depositions in this case in a manner that would not disturb the pending May 11, 2026 trial date. The defense has not yet responded to the Government's request.

15

**CONCLUSION**

For the foregoing reasons, the defendant's pretrial motions to dismiss the Passport Fraud Count and for letters rogatory should be denied.

Dated: New York, New York
January 22, 2026

Respectfully submitted,

JAY CLAYTON
United States Attorney

By:    /s/
Meredith Foster
Remy Grosbard
Assistant United States Attorneys
Southern District of New York
(212) 637-6522 / -2446


A. TYSON DUVA
Assistant Attorney General
Department of Justice
Criminal Division

By:    /s/
Chelsea Schinnour
Trial Attorney
Human Rights and Special
Prosecutions Section
U.S. Department of Justice
(202) 603-8738