UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X

UNITED STATES OF AMERICA,

            -against-                   Ind. S1 24-cr-227(ER)

DANIEL SIKKEMA,

            *Defendant.*

------------------------------------------------------X

## REPLY MEMORANDUM IN SUPPORT OF
## PRETRIAL MOTIONS

In this memorandum, we reply to the government's memorandum in opposition to our pretrial motions, insofar as they address (1) our request for the issuance of letters rogatory; and (2) the establishment of deadlines for the production of certain discovery. *See* Doc. 54 ("Gov. Memo"); Doc. 55 ("Gov. Discovery Ltr.")

## Point I

## THE COURT SHOULD ISSUE LETTERS ROGATORY TO OBTAIN
## EVIDENCE AND TESTIMONY FROM BRAZIL

In this murder prosecution, in which our client, Daniel Sikkema, is facing the possibility of mandatory life imprisonment, we seek to obtain two forms of evidence via letters rogatory (in addition to witness deposition requests, which are the subject of a separate proposed scheduling order): (1) Tapes and/or Transcripts and other evidence from the court proceedings conducted in Brazil relating to the murder of Brent Sikkema; and (2) Brent Sikkema's cell phone. These would appear to be reasonable requests, considering that the Brazilian trial record relates directly to the

1

instant charges. Nonetheless, the government objects, arguing that we are just "fishing" for potentially useful information, and wrongly seeking inadmissible hearsay and impeaching evidence. *See* Gov. Memo at 9. The government's objections are curious considering it informs the Court it is seeking similar evidence via a Mutual Legal Assistance Treaty ("MLAT") request. *Id.* at 10.[1]

## A. Tapes and/or Transcripts and other evidence from the court proceedings conducted in Brazil relating to the murder of Brent Sikkema.

The government's arguments are based on analogizing letters rogatory to Rule 17(c) subpoenas and the *Nixon* line of cases. *See* Gov. Memo at 5-7; *United States v. Nixon*, 418 U.S. 683, 700 (1974). As this Court explained in *United States v. Cole*, No. 19 CR. 869 (ER), 2021 WL 912425, at *4 (S.D.N.Y. Mar. 10, 2021), however, when it rejected the government's argument that *Nixon* forbade use of Rule 17(c) *trial* (as opposed to pre-trial) subpoenas to obtain impeachment evidence, *Nixon* held that the need for evidence to impeach witnesses is "insufficient to require its production *in advance of trial*," *id.* (emphasis in original), rather than *at trial*:

> However, in its argument, the Government omits a critical portion of the *Nixon* Court's analysis that is relevant here: "[g]enerally, the need for evidence to impeach witnesses is insufficient to require its production *in advance of trial*." *Id.* (emphasis added). Thus, the *Nixon* Court did not hold that subpoenas pursuant to Rule 17(c) could not be used to procure impeachment evidence at trial. Here, Cole propounded trial subpoenas, and at trial, impeachment evidence is certainly relevant to a witness's testimony. *See Skelos*, 2018 WL 2254538, at *2. Notably, several courts

---

[1]      The government says, "it will provide any such [MLAT-derived] materials in its possession to defense counsel pursuant to its discovery obligations." Gov. Memo at 10. This cryptic assurance of sharing assumes, of course, that the materials come into the government's possession, and that the government determines, in its discretion, that its "discovery obligations" compel such sharing. We don't believe that such a contingent promise to share – which in any event might not occur until just before commencement of trial or even thereafter – renders our request for letters rogatory redundant.

in this District have concluded that trial subpoenas seeking evidence for impeachment are permissible under Rule 17(c). *See Avenatti*, 2020 WL 508682, at *3; *Skelos*, 2018 WL 2254538, at *2; *Percoco*, 2018 WL 9539131, at *1; *Seabrook*, 2017 WL 4838311, at *2. The Court likewise concludes that evidence sought for impeachment can satisfy the admissibility prong under *Nixon* and, therefore, be sought through a Rule 17(c) trial subpoena.

*Cole*, 2021 WL 912425, at *4 (footnote omitted).

*Nixon*, of course, concerned the Special Prosecutor's application for a Rule 17(c) subpoena directing President Nixon to produce, pretrial, tape recordings and documents relating to conversations with aides and advisors. The *Nixon* decision, therefore, focused on the rules applicable to obtaining evidence by subpoena *pretrial*, as this Court observed in *Cole*. Additionally, *Nixon's* discussion of whether the Rule 17(c) subpoena sought in that case should issue was largely influenced by the target of the subpoena, the President of the United States. Thus, although the Supreme Court stated that as a general matter, "Enforcement of a pretrial subpoena duces tecum must necessarily be committed to the sound discretion of the trial court since the necessity for the subpoena most often turns upon a determination of factual issues," a subpoena directed at the President requires heightened deference to the President:

> Enforcement of a pretrial subpoena duces tecum must necessarily be committed to the sound discretion of the trial court since the necessity for the subpoena most often turns upon a determination of factual issues. Without a determination of arbitrariness or that the trial court finding was without record support, an appellate court will not ordinarily disturb a finding that the applicant for a subpoena complied with Rule 17(c). See, e.g., *Sue v. Chicago Transit Authority*, 279 F.2d 416, 419 (CA7 1960); *Shotkin v. Nelson*, 146 F.2d 402 (CA10 1944).

3

In a case such as this, however, where a subpoena is directed to a President of the United States, appellate review, in deference to a coordinate branch of Government, should be particularly meticulous to ensure that the standards of Rule 17(c) have been correctly applied. *United States v. Burr*, 25 F.Cas. pp. 30, 34 (No. 14,692d) (CC Va.1807). From our examination of the materials submitted by the Special Prosecutor to the District Court in support of his motion for the subpoena, we are persuaded that the District Court's denial of the President's motion to quash the subpoena was consistent with Rule 17(c). We also conclude that the Special Prosecutor has made a sufficient showing to justify a subpoena for production before trial. The subpoenaed materials are not available from any other source, and their examination and processing should not await trial in the circumstances shown. *Bowman Dairy Co. v. United States*, 341 U.S. 214 (1951); *United States v. Iozia*, 13 F.R.D. 335 (S.D.N.Y. 1952).

*United States v. Nixon*, 418 U.S. 683, 702 (1974).

Here, we believe we are entitled — at least as a matter of this Court's discretion — to pretrial disclosure of the Brazilian trial materials sought via letters rogatory (*i.e.*, the "trial evidence and testimony from the Brazilian proceedings" (Doc. 53, "Def. Memo," at 6)), but to the extent the Court disagrees, we respectfully ask that the letters rogatory nonetheless issue and the Court maintain sole custody of the records until trial. The relevance of the trial transcript and related evidence is hardly speculative, as the trial in Brazil concerns the same subject matter and charges as do the instant proceedings and therefore virtually all witness testimony and documentary or media evidence admitted in Brazil are *ipso facto* relevant to the instant proceedings — no "speculation" is required to establish relevance. Moreover, the transcripts and documentary/media evidence are not (as relevant to pretrial production) necessarily inadmissible hearsay, as one or more exceptions to the

hearsay rules likely will apply to much of the evidence, *see, e.g.*, Fed. R. Evid. 803, 804, and 807; *see also Nixon*, 418 U.S. at 701 ("The hearsay rule does not automatically bar all out-of-court statements by a defendant in a criminal case."), or as non-hearsay under Rule 801(b). The documentary/media evidence may be admissible as business records or for one of many non-hearsay purposes.

If the Court determines that our request for letters rogatory is duplicative of the government's use of MLATs to secure copies of the Brazilian trial record (a determination with which we would respectfully disagree), the appropriate middle ground is not denial, but an order requiring:

- the government to diligently pursue its MLAT request(s);
- date-certain status updates regarding the government's progress in obtaining satisfaction of its MLAT request(s); and
- prompt production to the defense of all materials received by the government from Brazil.

## B. Brent Sikkema's Cell Phone.

The government objects to our request that letters rogatory issue to obtain Brent Sikkema's cellphone, calling the request "an obvious fishing expedition" because Brazil could not unlock the phone and the defense does not know its contents. That is backwards. The fact the contents are unknown is precisely why a neutral protocol is appropriate — and why outright denial would reward the happenstance that the evidence is locked.

1. **The request is grounded, not speculative.** The defense is not asking to rummage through random devices. The defense seeks a single, identified device seized by Brazilian authorities as evidence in the homicide investigation. Critically,

the defense's basis is not conjecture: a witness known to both sides reported to the government, at a lunch meeting months before the murder, that Brent Sikkema said he had to leave to meet with "Alejandro," which, if true, might establish (1) that a relationship existed between Brent and Alejandro Prevez, and (2) contradict Alejandro's protestations to law enforcement that he had never met Brent, even in Cuba. Witnesses will contradict Alejandro's claim that he never met Brent Sikkema in Cuba, and the contents of Brent Sikkema's seized cellphone — such as contacts, call logs, message metadata, and location artifacts — will either corroborate or refute Alejandro Prevez's claimed lack of prior contact with Brent Sikkema.

   2. <u>Much of what the defense seeks from Brent Sikkema's phone is not hearsay at all</u>. The government's hearsay objection assumes the defense intends to offer "communications" extracted from the phone for their truth. *See* Gov. Memo at 10-14. But the most probative phone artifacts in this dispute — contacts, call logs, timestamps, geolocation history, app metadata — are frequently non-hearsay, and in any event are plainly relevant to whether contact between Brent Sikkema and Alejandro Prevez occurred. Moreover, any communications between Brent Sikkema and Alejandro Prevez reflected in the phone contents likely would not be offered for a hearsay purpose but rather for the non-hearsay purpose of establishing that Brent Sikkema and Alejandro Prevez communicated with one another, contrary to Alejandro Prevez's representations. *See United States v. Fox*, No. 23-CR-227 (NGG), 2025 WL 2076664, at *9 (E.D.N.Y. July 23, 2025) ("Where the proponent offers records into evidence to prove the falsity of the statements therein or to link the

6

records to the defendant, courts within the Second Circuit admit such records into evidence because they are not offered for the truth of the matters asserted in the records.") (collecting cases)

3. **The government's privacy cases are inapposite—and the defense offers an appropriate protocol.** The government cites cases involving demands that living victims (including minors) "turn over their cellphones" for defense inspection. *See* Gov. Memo at 11. That is not what is sought here. The device is already seized by law enforcement in a homicide investigation. Unlike the defendants in the government's cited cases, the defense here proposes a practical protocol to protect privacy and prevent rummaging.[2] Specifically, we would agree that, should we be able to access the contents of Brent Sikkema's phone, we would first address with the government the portions thereof we propose sharing with our client or otherwise sharing with others, and any resulting dispute would be brought to the Court's attention for resolution before we would do so.

The government's "privacy invasion" argument is thus not a reason for denial; it is a reason for an order that installs guardrails.

4. **The government's "it probably can't be unlocked" argument is not a legal basis for denial.** Finally, **t**he government asserts it spoke to an FBI examiner who said he likely would likely have "trouble extracting information from the phone. *See*

---

[2]    Taking seriously the government's privacy claims is difficult, considering the government has possession of, and has produced in discovery, Alejandro Prevez's cell phone. Alejandro, unlike Brent Sikkema, is alive and the additional privacy concerns the government expresses as to Brent Sikkema's phone in theory would apply to Alejandro's as well. Although, of course, Brent Sikkema is a victim and Alejandro a perpetrator, there exists nonetheless the possibility of privacy concerns vis a vis information on both phones relating to innocent third parties.

Gov. Memo at 14. Difficulty is not impossibility — and it is certainly not a reason to deny access to evidence in a life-sentence case, particularly where the government has elected not to attempt acquisition or examination itself. If the government is right, the examination will confirm that; if the government is wrong, the examination may reveal highly material evidence.

For all these reasons, the Court should issue the requested letters rogatory.

## Point II

### THE PROPOSED SCHEDULING ORDER

In response to the scheduling order proposed in our initial motions, *see* Def. Memo at 10, the government has proposed an alternative pretrial disclosure schedule, as follows:

- April 8, 2026: The Government's production of 3500 material
- April 20, 2026: The Government's Rule 404(b) Notice,'
- April 20, 2026: The Government's witness and exhibit list
- April 27, 2026: The defendant's witness and exhibit list
- The defendant's production of Rule 26.2 material – At least 48 hours prior to anticipated start of defense case
- The defendant's production of Rule 17(c) subpoenas – Promptly after receipt, except if otherwise ordered by the Court for good cause shown.

Doc. 55, Gov. Discovery Ltr. at 5.

With respect to the government's production of 3500 material, the government adds, in its footnote 2:

> The Government also requests that the Court order the defense to (1) only seek a trial adjournment for good cause following production of 3500 material, and (2) return 3500 material upon a trial adjournment.

*Id.*, n.2.

With respect to this proposed schedule, we respond as follows:

A. <u>Production of Jencks Act Material</u>.

We do not object to the proposed production date of April 8, 2026. However, we do object as follows:

<u>Objection # 1.</u> The government's insistence of a "good cause" for adjournment request is unnecessary because if the Court determines that any such request is unreasonable it will deny the request. Further, the government should not be imposing upon the Court the "test" it believes the Court should employ in considering such a request.

<u>Objection # 2.</u> We object to the government's proposed clawback of Jencks Act material should an adjournment be granted, as it is entirely impractical and unnecessary. Were an adjournment to be granted, it likely would be several days after Jencks Act production, *i.e.*, after the defense and the client have extensively discussed and annotated the materials. Returning the materials would, therefore, serve no legitimate purpose whatsoever and would require us to forfeit access to all notes and highlighting we had added to the material (and it is not clear when the discovery would thereafter be returned to us).

<u>Objection # 3.</u> The Court should require the government to produce all *Brady* and *Giglio* material as the government becomes aware of such material, rather than awaiting the court-ordered production deadline for Jencks Act material. Our experience is that the government typically treats *Giglio* material as Jencks Act material and therefore withholds it until it produces Jencks Act material. We disagree. *Giglio* material is a subset of *Brady* material. Although courts have often

permitted the government to produce *Giglio* material when it produces Jenks Act material, *Giglio* material must nonetheless be disclosed "sufficiently in advance of trial in order for the defendant to make effective use of it at trial or at such other time as the Court may order." *United States v. Cummings*, No. 23-CR-214 (ER), 2023 WL 3098452, at *1 (S.D.N.Y. Apr. 26, 2023). Given this is a murder case, in which the murder occurred in Brazil and numerous of the witnesses are resident there, failure to obtain timely disclosure of *Giglio* material may well result in delaying trial – something the government says it seeks to avoid – or denying Mr. Sikkema the effective assistance of counsel.

## B. 404(b) Disclosure.

No good reason exists to not provide 404(b) disclosure when the 3500 material is provided. The government undoubtedly already knows all or the vast majority of the 404(b) material it intends to offer.[3] As the Court well knows, as trial approaches, the workload vastly accelerates and intensifies and, lacking any good reason, the government should not add to our last-minute burden by needlessly late disclosure of its 404(b) wish list.

## C. Witness and Exhibit Lists.

Both the witness and exhibit lists should be provided when the 3500 material is provided. By that time, the government will know its witnesses and the exhibits it intends to offer. In providing its exhibit list, we additionally ask that the government

---

[3]    As the Court knows, the original indictment, charging passport fraud, was returned April 12, 2024 (Doc 8), and the case was essentially trial-ready when the superseding murder indictment was returned.

be required to provide a file that contains the exhibits, rather than providing only a list, which from our experience often includes hundreds of files, and which are often identified differently than how they were identified in discovery. Undoubtedly, the government will have isolated the exhibits on its list and it is entirely reasonable to require that the government provide us a file containing them rather than requiring us to go on a scavenger hunt through what is presently a half-terabyte of discovery.[4]

The government also asks this Court to permit it to supplement these lists after the production deadline upon a showing of "good faith." Gov. Memo at 2. The problem we have encountered on numerous occasions is that the government continually supplements its witness and exhibit lists, up to and even during trial, creating insurmountable burdens to securing our clients' Sixth Amendment rights. We are often required to review reams of new discovery overnight as we are preparing for the next day's witnesses, planning our own defense, updating our summation draft, addressing developing issues, etc. The amorphous standard it proposes — "good faith" — is functionally meaningless,[5] which is why the Court should either set a final deadline or permit supplementation only upon a showing of extraordinary circumstances.

---

[4]    According to one estimate, a half-terabyte worth of data is the equivalent of 125,000 photos, 3.25 million PDF pages, or 650 physical filing cabinets of paper. *See* How much is 1 TB of storage? Dropbox, last viewed Feb. 5, 2026, available at https://www.dropbox.com/features/cloud-storage/how-much-is-1tb#:~:text=One%20terabyte%20gives%20you%20the,files%2C%20PDFs%2C%20and%20presentations (1 TB is 250,000 photos, 6.5 million PDF pages, and 1,300 filing cabinets full of paper).

[5]    The government apparently understands that its proposed "good faith" standard has no teeth since it seeks to require the defense to instead demonstrate "good cause" for any adjournment request, Gov. Memo at 5 n.2, as well to obtain permission from the Court to withhold materials the defense receives pursuant to a Rule 17(c) subpoena.

D. **Production of Rule 26.2 Material**.

The government's proposal that the defense provide its reverse-Jencks Act material "At least 48 hours prior to anticipated start of defense case," is unrealistic because the defense typically does not definitively know what witnesses it will call before the government rests and Rule 29 motions are made and decided (or deferred). However, to the extent we have decided whom to call or what exhibits to admit on our direct case by the proposed time, we will comply with our reverse-Jencks Act obligations.

E. **Production of Rule 17(c) Subpoenas**.

The government's request that we provide it copies of materials we obtain via Rule 17(c) subpoenas, "Promptly after receipt, except if otherwise ordered by the Court for good cause shown." Gov. Discovery Ltr. at 5. This request should be summarily rejected as the government's discovery rights are limited to those set forth in Rule 16 and the Jencks Act. *See, e.g.*, *United States v. Colburn*, No. CR 19-10080-NMG, 2020 WL 6566508, at *4 (D. Mass. Nov. 9, 2020) ("The government cites no case, and this court has found none, supporting the proposition that the government is entitled to request the issuance of a Rule 17(c) subpoena commanding a third-party simply to give it everything a defendant sought in his or her own subpoena."); *United States v. Diamont, Jr.* No. 05-10154-MLW (D. Mass. Nov. 22, 2005) (Dein, M.J.) ("This court sees no reason why the Government should be provided with information that would otherwise not be discoverable by the Government simply because the material was obtained by way of a subpoena.") (footnote omitted).  Should the government

agree to promptly share with the defense all materials it obtains via subpoena or otherwise, we would consider a reciprocal arrangement.

Date: New York, New York
       February 5, 2026

                                    Respectfully submitted,

                                        /s/

                                    Richard W. Levitt
                                    Levitt & Kaizer
                                    40 Fulton Street, 17th Floor
                                    New York, New York 10038
                                    (212) 480-4000
                                    rlevitt@landklaw.com

                                    Florian Miedel
                                    Miedel & Mysliwiec LLP
                                    52 Duane Street, 7th Fl.
                                    New York, New York 10007
                                    (212) 616-3042
                                    fm@fmamlaw.com

                                    *Attorneys for Defendant Daniel Sikkema*