UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

 – *against* –

DANIEL SIKKEMA,

                    Defendant.

**<u>OPINION & ORDER</u>**

24 Cr. 227 (ER)

<u>RAMOS</u>, D.J.:

Daniel Sikkema is charged in a four-count indictment with murder-for-hire conspiracy resulting in death, murder-for-hire resulting in death, conspiracy to murder and maim a person in a foreign country, and passport fraud.  Doc. 26.  Before the Court is Sikkema's motion to:  (1) dismiss the charge of passport fraud; (2) to request that the Court issue letters rogatory to obtain evidence and testimony from Brazil; and (3) to request that the Court set deadlines for the production of certain discovery.  Docs. 51–53. For the reasons set forth below, the motion is GRANTED in part and DENIED in part.

I.      **BACKGROUND**

A.  **Factual Background**

Unless otherwise noted, the following facts are drawn from the complaint and the superseding indictment.  *See* Docs. 1, 26.  In brief, in or about 2023, Sikkema agreed to pay another individual ("CC-1") to kill Sikkema's estranged husband (the "Victim") in Brazil.  Doc. 26 ¶ 1.  Between mid-2023 until January 2024, Sikkema sent multiple payments to CC-1 and CC-1's romantic partner in Cuba in order to facilitate CC-1's commission of the murder.  *Id.* ¶ 2.  Some of these payments were sent from Manhattan, where Sikkema lived at the time.  *Id.*  In the early morning of January 14, 2024, CC-1

snuck inside of the Victim's townhouse in Rio de Janeiro, Brazil, and stabbed the Victim multiple times.  *Id.* ¶ 3.  The Victim was found dead in the residence.  *Id.*

In the following days, CC-1 and Sikkema communicated several times, including through a Brazilian cell phone number that CC-1 arranged.  *Id.* ¶ 4.  Sikkema paid approximately $5,000 to CC-1 through CC-1's romantic partner.  *Id.*  On or about January 18, 2024, CC-1 was arrested in Brazil for the murder of the Victim.  *Id.* ¶ 5.

On February 8, 2024, Sikkema applied for a new U.S. passport for the minor child he shared with the Victim.  Doc. 1 ¶¶ 5(a), 5(e).  Sikkema's child had previously been issued a U.S. passport which Sikkema's attorney attempted to retrieve from the Victim's apartment in New York on January 21, 2024.  *Id* ¶ 4(d).  However, the apartment management company denied Sikkema's attorney access to the apartment and instead directed him to contact the executor of the Victim's estate.  *Id.*  Sikkema thereafter emailed the executor to request the passport, but the executor denied Sikkema's request.  *Id.*  On January 26, 2024, Sikkema sent another email to the executor once again requesting the U.S. passport.  *Id.* ¶ 4(e).  This email went unanswered.  *Id.*

Two weeks later, on February 8, 2024, Sikkema applied for a new U.S. passport for his child at the James A. Farley U.S. Post Office located in Manhattan, New York.  Doc. 1 ¶¶ 5(a), 5(e).  In addition to the application form (Form DS-11), Sikkema submitted a statement regarding a valid lost or stolen U.S. passport book (Form-DS 64) which stated:  "AFTER A TRIP WITH HIS OTHER FATHER TO EUROPE IN LAS [sic] AUGUST HE LOST THE PASSPORT."  *Id.* ¶¶ 5(a), 5(b).  Sikkema made this statement knowing his child's passport was not lost.  Doc. 8.

On February 15, 2024, the executor of the Victim's estate filed a petition in the Family Court of the State of New York, New York County, requesting to be named the child's guardian because Sikkema was "being charged with the murder of [the Victim] in Brazil." Doc. 1 ¶ 4(f). The court dismissed this petition on March 5, 2024. *Id.* On March 14, 2024, the executor provided the child's U.S. passport to Sikkema's attorney. *Id.* ¶ 4(g).

### B.  Procedural History

Sikkema was indicted by a grand jury on April 12, 2024. Doc. 8. Initially the sole count was passport fraud pursuant to 18 U.S.C. §§ 1542 and 2. *Id.* On November 4, 2024, Sikkema filed a motion to dismiss the indictment and, alternatively, a motion *in limine* to exclude certain evidence related to Sikkema's alleged involvement in the murder of the Victim. Doc. 20. On December 11, 2024, the Court issued an opinion denying both motions. Doc. 24. On February 11, 2025, a grand jury returned the superseding indictment, which added one count of murder-for-hire conspiracy resulting in death in violation of 18 U.S.C. §§ 1958 and 2, one count of murder-for-hire resulting in death in violation of 18 U.S.C. §§ 1958 and 2, and one count of conspiracy to murder and maim a person in a foreign country in violation of 18 U.S.C. §§ 956(a)(1) and (a)(2)(A). Doc. 26. In a conference before the Court on October 22, 2025, the Court set a trial start date of May 11, 2026. *See* Docket Entry dated October 22, 2025.

On December 22, 2025, Sikkema filed a motion to:  (1) dismiss the charge of passport fraud; (2) to request that the Court issue letters rogatory to obtain evidence and testimony from Brazil; and (3) to request that the Court set deadlines for the production of certain discovery. Docs. 51–53. The motion was fully briefed as of February 5, 2026.

*See* Doc. 57.  On February 24, 2026, both Sikkema and the Government filed motions to take depositions pursuant to Fed. R. Crim. P. 15.  Docs. 58–59.

## II.    DISCUSSION

### A.  Dismissal of the Charge of Passport Fraud

Sikkema argues that his charge of passport fraud should be dismissed for the same reasons he articulated in his initial motion to dismiss filed on November 4, 2024.  Doc. 53 at 1; *see* Doc. 20.  Sikkema does so only to ensure the issue is preserved for review.  Doc. 53 at 1 ("In an abundance of caution, we repeat that motion now, to assure it is preserved for further review, if necessary.").  As Sikkema does not advance any new arguments supporting the dismissal of the charge of passport fraud than he did in his initial motion, Doc. 20, the Court denies his motion to dismiss for the same reasons stated in the Court's December 11, 2024, opinion and order, Doc. 24.

### B.  Letters Rogatory to Obtain Evidence and Testimony from Brazil

Sikkema requests for the Court's issuance of letters rogatory to obtain evidence located in Brazil; specifically, he seeks:  (1) tapes and transcripts of the court proceedings relating to the murder of the Victim; and (2) the Victim's cell phone, which was recovered by police in Rio de Janeiro.[1]  Doc. 53 at 2.

"Letters rogatory are the medium, in effect, whereby one country, speaking through one of its courts, requests another country, acting through its own courts and by

---

[1] In Sikkema's initial motion, he additionally requests the issuance of letters rogatory for witness depositions of individuals who will not be able to attend trial in the United States.  Doc. 53 at 2–3. However, in Sikkema' reply motion, he indicates that the witness depositions are "subject to a separate proposed scheduling order."  Doc. 57 at 1.  Accordingly, the Court does not address the Sikkema's request for letters rogatory concerning these depositions.

methods of court procedure peculiar thereto and entirely within the latter's control, to assist the administration of justice in the former country." *United States v. Al Fawwaz,* No. S7 98 Crim. 1023 LAK, 2014 WL 627083, at *2 (S.D.N.Y. Feb. 18, 2014) (internal quotation marks omitted). "Letters rogatory are simply a means to obtain discovery to which a party is otherwise entitled." *United States v. Weisberg*, No. 08-CR-347 NGG RML, 2010 WL 5027537, at *2 (E.D.N.Y. Dec. 3, 2010) (citing *United States v. Korogodsky,* 4 F.Supp.2d 262, 265 (S.D.N.Y. 1998)).

As the letters rogatory concern "physical or documentary evidence," the Government argues that Sikkema must satisfy the requirements of Rule 17 of the Federal Rules of Criminal Procedure, which concerns a party's subpoena for documents to be used as evidence at trial. *See* Doc. 54 at 10; Fed. R. Crim. P. 17.[2] Rule 17(c) "allows parties to subpoena any books, papers, documents, data, or other objects the subpoena designates." *United States v. Seabrook*, No. 16 Cr. 467 (ALC), 2017 WL 4838311, at *1 (S.D.N.Y. Oct. 23, 2017). "Notably, [Rule 17] is not a method of discovery that supplements Rule 16." *United States v. Blakstad*, No. 19 Cr. 486 (ER), 2020 WL 5992347, at *11 (S.D.N.Y. Oct. 9, 2020) (citing *United States v. Nixon*, 418 U.S. 683, 698 (1974)).

Generally, the party requesting a subpoena has the burden of showing the following:

> (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith

---

[2] Though Sikkema contests the scope of Rule 17(c)'s restrictions, Sikkema does not contest the general applicability of Rule 17(c) standards for his requests for letters rogatory. *See* Doc. 57 at 2–5.

and is not intended as a general "fishing expedition."

*Nixon*, 418 U.S. at 699–700 (footnote omitted).  More succinctly, "the party seeking issuance of the subpoena 'must clear three hurdles:  (1) relevancy; (2) admissibility; (3) specificity.'" *Blakstad*, 2020 WL 5992347, at *11 (quoting *Nixon*, 418 U.S. at 700).

While *Nixon* restricts the use of 17(c) for impeachment evidence pre-trial, several courts in this district have concluded that trial subpoenas seeking evidence for impeachment are permissible under Rule 17(c).  *See United States v. Avenatti*, No. S1 19 Crim. 373 (PGG), 2020 WL 508682, at *3 (S.D.N.Y. Jan. 31, 2020); *United States v. Percoco*, No. 16 Crim. 776 (VEC), 2018 WL 9539131, at *1 (S.D.N.Y. June 14, 2018); *Seabrook*, 2017 WL 4838311 at *2; *United States v. Cole*, No. 19 Crim. 869 (ER), 2021 WL 912425, at *4 (S.D.N.Y. Mar. 10, 2021).  The Court likewise concludes that evidence sought for impeachment can satisfy the admissibility prong under *Nixon* and, therefore, be sought through a Rule 17(c) trial subpoena.

### 1. *Recordings and Transcripts of Brazilian Judicial Proceedings*

Sikkema first requests that the Court issue letters rogatory to obtain recordings and transcripts of Brazilian judicial proceedings concerning CC-1's alleged murder of the Victim.  Doc. 53 at 2.  Sikkema argues that the letters request is material and specifically described as:  (1) the proceedings concern the same alleged murder at the heart of this case; (2) the proceedings reportedly include sworn testimony from investigating officers, forensic experts, and witnesses that knew Sikkema, the Victim, and CC-1; (3) the proceedings contain testimony of witnesses that will likely cast doubt on the Government's central witness, CC-1; and (4) the evidence may corroborate their defensive theories or contradict statements provided by the Government.  Doc. 53 at 5–6.

Sikkema further argues that such material cannot be obtained by other means as the recordings and transcripts are within the custody of Brazilian authorities. *Id.* at 7. The Government opposes the request, arguing that Sikkema is "simply fishing for information"; the requested information is inadmissible under 17(c); and because the Government has already requested the same information pursuant to a Mutual Legal Assistance Treaty ("MLAT"). Doc. 54 at 13–14.

The Court finds Sikkema's request duplicative of the Government's request pursuant to a MLAT. Therefore, the Court DENIES Sikkema's request to issue letters rogatory to obtain recordings and transcripts of the relevant Brazilian judicial proceedings. The Government is directed to continue its efforts to obtain the information, to cooperate with Sikkema to provide updates on the requested information, and to promptly produce all material required by applicable law and discovery rules to Sikkema.

### 2. The Victim's Cell Phone

Sikkema requests that the Court issue letters rogatory to obtain the Victim's cell phone, which is currently locked and in the custody of Brazilian law enforcement.[3] Doc. 53 at 2. Sikkema argues that the request is material because: the phone would reveal communications, travel, and relationships directly preceding the Victim's killing; (2) it would reveal evidence of prior contact between the Victim and CC-1; (3) discovery has produced some evidence that CC-1 met with the Victim prior to the murder, and corroborating that evidence could be used to impeach CC-1; and (4) the request is limited

---

[3] Sikkema notes that the Brazilian police have been unable to open the phone because, "on information and belief, they were provided with the wrong password and have otherwise been unable to unlock it." Doc. 53 at 2.

to a single device already subject to investigation.  Doc. 53 at 6–7.  The Government

opposes the request arguing that the request is a fishing expedition; that evidence of

contact between CC-1 and the Victim, or the lack thereof, is already available in

discovery through the production CC-1's cell phone and CC-1's electronic accounts; that

Sikkema seeks hearsay or impeachment evidence not permitted under Rule 17(c); that the

Victim's cell phone poses privacy risks to the Victim and third parties; that Sikkema has

failed to demonstrate that Brazil will comply with the request; and that there is little

reason to believe Sikkema would be able to unlock the phone, given Brazilian officials

have not and an FBI examiner stated they would "likely have trouble extracting much, if

any content from the device."  Doc. 54 at 14–18.

Given that the contents of CC-1's phone and CC-1's electronic accounts have

already been produced in discovery, the relevance of additional evidence concerning

contact between CC-1 and the Victim from the Victim's phone is limited.  In addition,

given the delay that issuing letters rogatory would pose on this action,[4] and the fact that

Sikkema provides no indication that Brazilian officials would cooperate with the request

further mitigates against granting the request.  Accordingly, the Court DENIES

Sikkema's request to issue letter's rogatory for the Victim's phone.

### C.  Deadlines for the Production of Certain Discovery

Sikkema argues that the production deadlines for certain discovery should be set

earlier than usual, to account for the extra time required to translate certain materials

from Spanish and Portuguese; to allow for defense counsel to review the material; and to

---

[4] Sikkema notes that obtaining evidence through letters rogatory can take up to a year; though they articulate it can take as little as one month, if the letters rogatory are expedited.  Doc. 53 n.5.

follow up or seek out new material that may be in Brazil and Cuba. Doc. 53 at 9–11. The Government also argues for early, although different, discovery deadlines. Doc. 55 at 5.

### 1. *Rule 15 Briefing Schedule*

As a preliminary matter, the parties have agreed to the following schedule for Rule 15 depositions: February 24, 2026 to file their initial Rule 15 motions; March 3, 2026 for the parties to file any oppositions to the requested depositions; and March 10, 2026 for the parties to file any reply briefs. Doc. 55 at 2–3. Both parties filed their motions on February 24, 2026, *see* Docs. 58–59; however, only the Government filed its opposition motion on March 3, 2026, *see* Doc. 60.

The Court directs Sikkema to file his opposition to the Government's motion to take deposition pursuant to Rule 15 by March 13, 2026. If Sikkema fails to file an opposition brief by that deadline, the Court will consider the Government's motion fully briefed. Both parties are directed to file any replies by March 20, 2026.

### 2. *Production of the Government's Jencks Act Material*[5]

In its opposition brief, the Government proposes that all Jencks Act material be produced by April 8, 2026, a deadline to which Sikkema "do[es] not object." *See* Docs.

---

[5] The Jencks Act, 18 U.S.C. § 3500, provides that "no prior statement made by a government witness shall be the subject of discovery until that witness has testified on direct examination." *United States v. Coppa*, 267 F.3d 132, 145–146 (2d Cir. 2001); Fed. R. Crim. P. 26.2 (incorporating the Jencks Act); *see also United States v. Seabrook*, No. 10-cr-87 (DAB), 2010 WL 5174353 (S.D.N.Y. Dec. 14, 2010) ("[T]he Jencks Act provides the exclusive procedure for discovering statements that government witnesses have given to law enforcement agencies." (quoting *In re United States*, 834 F.2d 283, 287 (2d Cir. 1987))). After its witness testifies, upon Defendant's motion, the Government must produce to defendant any statement it possesses by the witness "which relates to the subject matter as to which the witness has testified." 18 U.S.C. § 3500(b). These statements are also known as "3500 material."

55 at 5, 57 at 9.[6]  Accordingly, the Government's production of Jencks Act material is due April 8, 2026. [7]

The Government further proposes that, after this date:  (1) Sikkema only be allowed to seek adjournment of trial for good cause and, (2) if an adjournment is granted that Sikkema be required to return all produced Jencks Act material.  Sikkema objects to both arguments.  Doc. 55 at n.2.  With respect to the first request, the Court finds no need to enforce a "good cause" standard, as the Court will evaluate all adjournment requests regardless.  With respect to the second request, the Government cites no caselaw to support such a proposal, and accordingly the Court declines to award it.

In his reply, Sikkema further requests that the Government produce all *Brady* and *Giglio* material as "the government becomes aware of such material."[8]  Doc. 57 at 9–10. Under *Brady*, the government must disclose favorable material evidence to a criminal defendant.  *See Brady v. Maryland*, 373 U.S. 83, 87 (1963); *United States v. Rivas*, 377 F.3d 195, 199 (2d Cir. 2004).  Evidence is favorable if it is exculpatory or, under *Giglio*, if it could be used to impeach a key government witness.  *See Giglio v. United States*, 405 U.S. 150, 154 (1972).  As a general rule, *Brady* and its progeny do not require immediate disclosure of all exculpatory and impeachment material upon request by a defendant.

---

[6]  In his initial motion, Sikkema requested that Jencks Act material be disclosed by March 16, 2026.  Doc. 53 at 10.

[7] Unlike with the other types of disclosure, Sikkema does not take issue with supplementation of produced Jencks Act material.  *See* Doc. 53 at 10 ("Although such supplemental disclosures are appropriate with respect to 3500 material reflecting witness interviews that post-date the initial disclosure deadline, they should not be permitted as to the other disclosures in this case.") Doc. 53 at 10.

[8] In full, Sikkema requests that "[t]he Court . . . require the [G]overnment to produce all *Brady* and *Giglio* material as the government becomes aware of such material, rather than awaiting the court-ordered production deadline for Jencks Act material.  Our experience is that the government typically treats *Giglio* material as Jencks Act material and therefore withholds it until it produces Jencks Act material."  Doc. 57 at 9.  However, in the instant case, the Government has not requested to produce *Brady* and *Giglio* material at the same time as its Jencks Act material.

*United States v. Coppa*, 267 F.3d 132, 146 (2d Cir. 2001). In *Coppa*, the Second Circuit observed that the law appears settled as to when the prosecution must make a disclosure required by *Brady*: "*Brady* material must be disclosed in time for its effective use at trial." *Id.* at 135. Courts do, however, have some "discretion to order pretrial disclosures as a matter of sound case management." *Id.* at 146.

However, as Sikkema's request to produce *Brady* and *Giglio* material "as the Government becomes aware of such material," for first time in his reply motion, the Government is directed to respond to this request by March 16, 2026.

### 3. *Government's Witness & Exhibit List*

Sikkema argues that the Government should produce its witness and exhibit list on April 8, 2026, the same date as the Jencks Act material is to be produced.[9] Sikkema argues that, upon disclosure of Jencks Act material, the "government will know its witnesses and the exhibits it intends to offer." Doc. 57 at 10. Meanwhile the Government proposes a deadline of April 20, 2026. Doc. 55 at 5. The Court sets the deadline of April 20, 2026, for the production of the Government's witness and exhibit list.

Sikkema further argues that the Government only be allowed to supplement its witness and exhibit list upon a showing of "extraordinary circumstances." Doc. 53 at 10. Sikkema argues that, on numerous, but unspecified, previous occasions, the Government has supplemented witness and exhibit list just before or during trial, creating "insurmountable burdens" for defense counsel and endangering Sikkema's Sixth

---

[9] In its initial motion, Sikkema requested that the Government produce its witness and exhibit list on March 23, 2026, Doc. 53 at 10, but in its reply, it argued for a deadline of April 8, 2026, Doc. 57 at 10.

11

Amendment rights.  Doc. 57 at 11.   The Government opposes this requirement as unprecedented.  Doc. 55 at 4.   As Sikkema cites no applicable law to support his request, the Court declines to require the Government to only supplement their witness and exhibit list only upon a showing of extraordinary circumstances.  To the extent that the Government does supplement its witness or exhibit list in a manner that would prejudice Sikkema, Sikkema can raise it with the Court when the issue arises.

Finally, in his reply, Sikkema further requests that the exhibits be provided in a file as opposed to a list.  Doc. 57 at 10–11.  The Court finds this reasonable; however, as it was raised in a reply brief, the Court directs the government to respond to the request by March 16, 2026.

### 4. Production of the Government's 404(b) Notice

Sikkema argues that the Government should produce its 404(b) notice on April 8, 2026, the same date as the Jencks Act material is to be produced.[10]  Doc. 57 at 10. Sikkema argues that, upon disclosure of Jencks Act material, the "government undoubtedly already knows all or the vast majority of the 404(b) material it intends to offer."  Doc. 57 at 10.  Meanwhile the Government proposes a deadline of April 20, 2026.  Doc. 55 at 5.

Rule 404(b) requires that the government "provide reasonable notice . . . before trial" of its intent to introduce evidence of a defendant's other crimes or bad acts.  *See* Fed. R. Evid. 404(b).  Though Rule 404(b) does not define "reasonable notice," courts in the Second Circuit have generally held that ten days suffices as "reasonable notice."  *See*

---

[10] In its initial motion, Sikkema requested that the Government produce it's 404(b) material on March 2, 2026, Doc. 53 at 10, but in its reply brief it argued for an April 8, 2026 deadline, Doc. 57 at 10.

*United States v. Gillier*, No. 11 Crim 409 (PAE), 2022 WL 179204, at *4 (S.D.N.Y. Jan. 19, 2022) ("In general, '[c]ourts in this Circuit have routinely found that at least ten business days provides reasonable notice to a defendant under Rule 404(b).'") (citation omitted); *see also United States v. Torres*, 05-CR-838 (NGG), 2006 WL 1982750, at *6 (Jul. 14, 2006) ("A court may provide for a longer notice period, especially in the case of a complex trial, in which the 404(b) evidence is critical to the action[.]") (citation omitted).

Here, the Court finds that a deadline of April 20, 2026, provides the required reasonable notice, as that date is three weeks prior to the start of trial on May 11, 2026. Accordingly, the deadline for the Government's 404(b) production is April 20, 2026.[11]

### 5. *Sikkema's Witness & Exhibit List*

The Government requests that Sikkema's deadline to produce his witness and exhibit list be April 27, 2026. Doc. 55 at 5. Sikkema does not respond to this request in his reply brief. Accordingly, the Court sets the deadline of April 27, 2026, for the production of Sikkema's witness and exhibit list.

### 6. *Sikkema's Rule 26.2 Production*

The Government requests that Sikkema be required to produce all Rule 26.2 material 48 hours prior to the start of the defense case. Doc. 55 at 5. Sikkema consents to this deadline, "to the extent we have decided whom to call or what exhibits to admit," however objects to the fact that this information will be finalized. Doc. 57 at 12. Sikkema argues that the defense "typically does not definitively know what witnesses it

---

[11] To the extent that Sikkema also asks that the Government's 404(b) notice only be updated with a showing of "exceptional circumstances," such a requirement is also denied for the reasons detailed above.

will call before the government rests and Rule 29 motions are made and decided (or deferred)." *Id*. Accordingly, to the extent that it is known, Sikkema is directed to produce Rule 26.2 material for witnesses he expects to use 48 hours prior to the start of the defense's case.

### 7. *Sikkema's Production of Rule 17(c) subpoenas*

Finally, the Government requests that Sikkema produce Rule 17(c) subpoenas promptly after receipt, unless otherwise ordered by the Court for good cause shown. Doc. 55 at 5. Sikkema objects, arguing that the Government is not entitled to discovery of Rule 17(c) subpoenas. As the Government cites no applicable law in making their request, the request is denied.

## III.    CONCLUSION

For the reasons stated above, Sikkema's motion to dismiss and Sikkema's request for letters rogatory are DENIED.

The Court sets forth the following schedule for the remaining briefs concerning the motions to take depositions pursuant to Rule 15: Sikkema's opposition brief is due March 13, 2026; both the Government and Sikkema's reply brief is due March 20, 2026.

The Court sets forth the following discovery schedule:
- April 8, 2026:  the Government's production of Jencks Act material
- April 13, 2026:  motions *in limine* due[12]
- April 20, 2026:  the Government's Rule 404(b) notice
- April 20, 2026:  the Government's witness and exhibit list
- April 27, 2026:  Sikkema's witness and exhibit list

---

[12] The schedule for motions *in limine* was set during the October 22, 2025 conference before the Court. *See* Docket Entry dated October 22, 2025.

- 48 hours prior to the start of the defense case: Sikkema's production of Rule 26.2 material, to the extent that it is known

Finally, the Court directs the Government to file a letter with the Court by March

13, 2026, responding to the following requests raised by Sikkema in his reply brief:

- That the Government produce all *Brady* and *Giglio* material as the Government becomes aware of such material.
- That the Government produce all exhibits in a file as opposed to a list.

It is SO ORDERED.

Dated:    March 9, 2026
          New York, New York

EDGARDO RAMOS, U.S.D.J.

15