UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

  – *against* –

DANIEL SIKKEMA,

                            Defendant.

**OPINION & ORDER**

24 Cr. 227 (ER)

RAMOS, D.J.:

Daniel Sikkema is charged in a four-count superseding indictment with murder-for-hire conspiracy resulting in death, murder-for-hire resulting in death, conspiracy to murder and maim a person in a foreign country, and passport fraud.  Doc. 26.  Before the Court is Sikkema's motion to take depositions pursuant to Fed. R. Crim. P. 15.  Doc. 58. For the reasons set forth below, the motion is GRANTED in part and DENIED in part.

## I.       BACKGROUND

### A.  Factual Background

Unless otherwise noted, the following facts are drawn from the complaint and the superseding indictment.  *See* Docs. 1, 26.  In brief, in or about 2023, Sikkema agreed to pay Alejandro Prevez to kill Sikkema's estranged husband (the "Victim") in Brazil.  Doc. 26 ¶ 1.  Between mid-2023 until January 2024, Sikkema sent multiple payments to Prevez and Prevez's romantic partner in Cuba in order to facilitate Prevez's commission of the murder.  *Id.* ¶ 2.  Some of these payments were sent from Manhattan, where Sikkema lived at the time.  *Id.*  In the early morning of January 14, 2024, Prevez snuck inside of the Victim's townhouse in Rio de Janeiro, Brazil, and stabbed the Victim multiple times.  *Id.* ¶ 3.  The Victim was found dead in the residence.  *Id.*

In the following days, Prevez and Sikkema communicated several times, including through a Brazilian cell phone number that Prevez "set up specifically" for Sikkema. *Id.* ¶ 4. Sikkema paid approximately $5,000 to Prevez through Prevez's romantic partner. *Id.* On or about January 18, 2024, Prevez was arrested in Brazil for the murder of the Victim. *Id.* ¶ 5.

On February 8, 2024, Sikkema applied for a new U.S. passport for the minor child he shared with the Victim. Doc. 1 ¶¶ 5(a), 5(e). Sikkema's child had previously been issued a U.S. passport which Sikkema's attorney attempted to retrieve from the Victim's apartment in New York on January 21, 2024. *Id* ¶ 4(d). However, the apartment management company denied Sikkema's attorney access to the apartment and instead directed him to contact the executor of the Victim's estate. *Id.* Sikkema thereafter emailed the executor to request the passport, but the executor denied Sikkema's request. *Id.* On January 26, 2024, Sikkema sent another email to the executor once again requesting the U.S. passport. *Id.* ¶ 4(e). This email went unanswered. *Id.*

Two weeks later, on February 8, 2024, Sikkema applied for a new U.S. passport for his child at the James A. Farley U.S. Post Office located in Manhattan, New York. Doc. 1 ¶¶ 5(a), 5(e). In addition to the application form (Form DS-11), Sikkema submitted a statement regarding a valid lost or stolen U.S. passport book (Form-DS 64) which stated: "AFTER A TRIP WITH HIS OTHER FATHER TO EUROPE IN LAS [sic] AUGUST HE LOST THE PASSPORT." *Id.* ¶¶ 5(a), 5(b). Sikkema made this statement knowing his child's passport was not lost. Doc. 8.

On February 15, 2024, the executor of the Victim's estate filed a petition in the Family Court of the State of New York, New York County, requesting to be named the

child's guardian because Sikkema was "being charged with the murder of [the Victim] in Brazil." Doc. 1 ¶ 4(f). The court dismissed this petition on March 5, 2024. *Id.* On March 14, 2024, the executor provided the child's U.S. passport to Sikkema's attorney. *Id.* ¶ 4(g).

### B. Procedural History

Sikkema was indicted by a grand jury on April 12, 2024. Doc. 8. Initially the sole count was passport fraud pursuant to 18 U.S.C. §§ 1542 and 2. *Id.* On November 4, 2024, Sikkema filed a motion to dismiss the indictment and, alternatively, a motion *in limine* to exclude certain evidence related to Sikkema's alleged involvement in the murder of the Victim. Doc. 20. On December 11, 2024, the Court issued an opinion denying both motions. Doc. 24. On February 11, 2025, a grand jury returned the superseding indictment, which added one count of murder-for-hire conspiracy resulting in death in violation of 18 U.S.C. §§ 1958 and 2, one count of murder-for-hire resulting in death in violation of 18 U.S.C. §§ 1958 and 2, and one count of conspiracy to murder and maim a person in a foreign country in violation of 18 U.S.C. §§ 956(a)(1) and (a)(2)(A). Doc. 26. In a conference before the Court on October 22, 2025, the Court set a trial start date of May 11, 2026. *See* Docket Entry dated October 22, 2025.

On December 22, 2025, Sikkema filed a motion to dismiss the charge of passport fraud; to request that the Court issue letters rogatory to obtain evidence and testimony from Brazil; and to request that the Court set deadlines to produce certain discovery. Docs. 51–53. On February 24, 2026, both Sikkema and the Government filed motions to take depositions pursuant to Fed. R. Crim. P. 15. *See* Docs. 58, 59.

3

On March 9, 2026, the Court issued an opinion granting in part and denying in part Sikkema's December 22, 2025, motion. Doc. 62. On March 17, 2026, Sikkema's Rule 15 motion, including a *sur reply* from the Government, was fully briefed. *See* Doc. 71. On March 20, 2026, the Court granted the Government's Rule 15 motion, after Sikkema indicated that he did not oppose it. Docs. 63, 73.

## II.    DISCUSSION

Rule 15 depositions may be employed when, due to exceptional circumstances, it is in the interest of justice that the testimony of a prospective witness of a party be taken and preserved for use at trial. Fed. R. Crim. P. 15(a)(1). In order to succeed on a motion under Rule 15(a), a movant must show that: (1) the prospective witness is unavailable for trial, (2) the witness' testimony is material, and (3) the testimony is necessary to prevent a failure of justice. *United States v. Cohen*, 260 F.3d 68, 78 (2d Cir. 2001).

With respect to unavailability, courts use "practical standard of whether under the circumstances the [movant] has made a good-faith effort to produce the person to testify at trial." *United States v. Mohamed*, No. 18-CR-603 (ARR), 2020 WL 1545522, at *2 (E.D.N.Y. Apr. 1, 2020) (alterations in original) (quoting *United States v. Johnpoll*, 739 F.2d 702, 709 (2d Cir. 1984))). "Unavailability for trial does not equate to mere inconvenience—a witness must be truly unavailable. The movant must demonstrate that he or she has made a good faith . . . but unsuccessful effort to obtain the witness' presence at trial." *United States v. Norman,* No. S107 Cr. 961 (KBF), 2012 WL 5278548, at *1 (S.D.N.Y. Oct. 24, 2012) (citing *Johnpoll,* 739 F.2d at 709); *see also United States v. Al Fawwaz*, No. S7 98 CRIM. 1023 (LAK), 2014 WL 627083, at *1 (S.D.N.Y. Feb. 18, 2014) ("Foreign witnesses who are not subject to the government's subpoena power and,

despite the moving party's appropriate efforts, refuse to travel to this country to testify routinely are found [to be] unavailable.").

With respect to materiality of "the proposed witness' testimony, the movant must show beyond 'unsubstantiated speculation' that the testimony tends to exculpate the defendant." *Norman*, 2012 WL 5278548, at *1; *see also United States v. Mohamed*, No. 18-CR-603 (ARR), 2020 WL 1545522, at *2 (E.D.N.Y. Apr. 1, 2020) ("The testimony 'must be exculpatory or go directly to negating an essential element of the government's case.'") (internal citation omitted). But "[t]here is no requirement that the testimony being sought must surely acquit the defendant." *United States v. Little*, No. 12-CR-647 (ALC), 2014 WL 1744824, at *1 (S.D.N.Y. Apr. 23, 2014).

Finally, "testimony 'is necessary to prevent a failure of justice' when the witness is unavailable, his testimony is material, and there are no substantial countervailing factors militating against the taking of the deposition." *Little,* 2014 WL 1744824, at *2 (citing *United States v. Grossman*, No. S203 CR. 1156 (SHS), 2005 WL 486735, *3 (S.D.N.Y. Mar. 2005).

Sikkema seeks to take Rule 15 depositions of seven witnesses who reside in Brazil and Cuba. *See* Doc. 58-1. The Court examines each in turn.

### A.  Alejandro Prevez

First, Sikkema seeks to depose Prevez, who was arrested in Brazil for killing the Victim. Doc. 58-1 at 7. Both Sikkema and the Government state that the Government has not yet decided if they will call Prevez as a witness at trial. *Id.*; Doc. 60 at 3. The Government does not oppose the pretrial deposition of Prevez "given the Government's understanding that Prevez would be able to invoke his Fifth Amendment right." Doc. 60

at 3.  The Government concedes that, as Prevez is currently incarcerated in Brazil for the murder of the Victim, he will be unavailable to attend trial, and his testimony is likely to be highly relevant.  *Id*.  Accordingly, Sikkema's Rule 15 deposition of Prevez is granted.

In his reply brief, Sikkema requests that the Court require the Government to disclose:  (1) any agreements about testimony that bear on privilege or availability and (2) whether the government has taken a position with Brazilian authorities regarding Prevez's testimony.  Doc. 64 at 2–3.   Sikkema argues that with this information, "the Court will be in a better position to assess whether it should enter an Order directing the [G]overnment to take all available measures to compel Prevez's deposition testimony pursuant to any existing agreements between himself and the United States and/or Brazil."  *Id.* at 3; *see also id.* at 2 ("If there exists some form of testimonial agreement or understanding between Prevez and the United States and/or Brazil, our government should not be permitted to sit in silence while Prevez asserts a privilege at a Rule 15 deposition that may be overcome, for example, by our government's direction to Prevez that he honor his agreement to testify.").  However, Sikkema cites no legal authority to support this extraordinary remedy.  Accordingly, the additional request is denied.

### B.  Maria das Dores Rodrigues, Rose Souza, Simone Nunes

Sikkema seeks to depose three Brazilian residents—Maria das Dores Rodrigues, Rose Souza, and Simone Nunes.  According to Sikkema, Dores Rodrigues was the housekeeper for the Victim and can testify about "who had a key to the house, [the Victim]'s activities there, and her knowledge (if any) regarding the use of her ID number" in connection with an account at issue; Souza was Prevez's landlord in Sao Paolo and can testify to Prevez's travel to Rio de Janeiro and any statements he made about meeting an

American friend or employer; and Nunes was the Victim's attorney and friend who managed his home in Rio de Janeiro and was the one who found the Victim's body. Doc. 58-1 at 7–8.

With respect to Dores Rodrigues, Souza, and Nunes the Government argues that Sikkema has failed to meet his burden to show the witnesses are unavailable, that their testimony is material, or that their testimony is necessary to prevent a failure of justice. Doc. 60 at 6–11.

With respect to unavailability, Sikkema asserts that the "proposed witnesses reside outside [of] the United States. None is subject to [a] trial subpoena from this Court. The defense therefore cannot compel their appearance at trial in New York. Nor can the defense assure voluntary appearance." Doc. 58-1 at 10. However, he makes no indication that he has made the requisite good faith efforts to reach out to these witnesses to ascertain if they are available or willing to testify at trial. *See Norman*, 2012 WL 5278548 at *1 ("The movant must demonstrate that he or she has made a good faith . . . but unsuccessful effort to obtain the witness' presence at trial."). In fact, the Government points out that it "has spoken to each of [Dores Rodrigues, Souza, and Nunes] and understands that they are all willing to travel to the United States and testify." Doc. 60 at 7.

Though Sikkema argues that "[w]here foreign witnesses are beyond subpoena power and their voluntary appearance cannot be assured, Rule 15 relief is commonly warranted," the cases he cites in which a court granted a contested Rule 15 motion are inapposite, as they all involved a moving party who showed good faith efforts to have the witness attend trial. *United States v. Wey*, No. 15-CR-611 (AJN), 2017 WL 237651, at

*25 (S.D.N.Y. Jan. 18, 2017) (finding that Wey sufficiently showed a witness was unavailable when the witness was abroad, beyond the subpoena power of the Court, and where defense counsel represented that he spoke with the witness's counsel and was informed the witness "does not intend to travel to the United States to testify."); *United States v. Mashinsky*, No. 23-CR-347 (JGK), 2024 WL 4728499, at *5 (S.D.N.Y. Nov. 8, 2024) (finding the Mashinsky established three witnesses were unavailable who lived abroad, were outside of the subpoena power of the court, and "despite the defendant's efforts" were unwilling to attend or did not respond to counsel's requests.). *But see United States v. Htut*, No. 22-CR-671 (NSR), 2023 WL 3222484, at *2 (S.D.N.Y. May 3, 2023) (finding defendant sufficiently showed unavailability where the Government did not contest unavailability, and the defense counsel believed it could only access witnesses through a rule 15 motion).[1]

As Sikkema puts forth no facts to show that he has made a good faith effort to demonstrate Dores Rodrigues, Souza, and Nunes are unavailable, the Court denies his motion with respect to those witnesses.[2]

---

[1] In a footnote, Sikkema argues that because the Government intends to call the witnesses at trial, "Sikkema's own efforts to secure these witnesses' attendance would do nothing at all." Doc. 64 at n.1. However, for purposes of satisfying the requirements of Rule 15, Sikkema must demonstrate that he made a good faith effort to secure their availability.

[2] Because the Court finds Sikkema has not met his burden to show a Rule 15 deposition would be warranted with respect to Dores Rodrigues, Souza, and Nunes, the Court does not address his request to "determine whether their presence is sufficiently assured to not require Rule 15 depositions as to them." Doc. 58-1 at 9. The Court further does not address Sikkema's request that "the Court [be] willing to adjourn trial to take their depositions should they fail to appear." *Id*. Such a request is premature. The parties can submit an adjournment request, and the Court will evaluate the request at that time.

### C.  Maria Elena Morciego Carrera, Daniel Corvo, and Christian[3]

Sikkema next seeks testimony from three witnesses, Maria Elena Morciego Carrera, Daniel Corvo, and Christian, who he says are residents of Cuba.

In his opening brief, Sikkema states that Morciego Carrera is his cousin and lived in the house owned by Sikkema and the Victim, where Prevez was employed.  Doc. 58-1 at 8.  He states that Morciego Carrera interacted with Prevez and "can testify about money owed to [him] for services and about her participation in paying him back wages." *Id.*  Sikkema states that Corvo was a housekeeper at the house that Sikkema and the Victim owned, and that Corvo can testify that in December 2022, the Victim told the staff to take the week off except for Prevez and another employee, Christian, who worked as security guards.  *Id.*  Sikkema states that Corvo's testimony is relevant because it will show that Prevez and the Victim knew each other and interacted in Cuba, contrary to Prevez's statements to the police that although he worked at a property owned by the Victim, he never met the Victim.  *Id.*; Doc. 64 at 9.  According to the declaration attached to Sikkema's reply brief, both Morciego Carrera and Corvo are willing to testify at trial; however, they will be unable to do so without a valid visa.  Doc. 64-1 at 2–3.

Sikkema states that Christian was the other security guard with Prevez and can testify regarding their interactions with the Victim.  *Id.*  Sikkema makes no indication that he has contacted Christian; and the Government indicates that Christian "confirmed that he resides in New Mexico."  Doc. 71 at n.5; *see* Docs. 60 at n.3.

---

[3] Sikkema states that he does not know Christian's last name, but that he expects to obtain it shortly.  Doc. 58-1 at 9.

In his reply brief, Sikkema further highlights that "at least one of [the] Cuban witnesses" will confirm that Sikkema owed money to Prevez after Sikkema and the Victim separated, and that Sikkema would periodically pay Prevez portions of the outstanding balance, "notwithstanding Prevez's claims that any money he received . . . from [Sikkema] was payment for the supposed murder contract." Doc. 64 at 9. Sikkema states that these witnesses will show that Prevez had been falsely denying his prior relationship with the Victim, "to deflect suspicion that [Prevez] had an independent personal reason to murder [the Victim]" and that Sikkema owed Prevez money, "not for the charged murder-for-hire scheme but rather for Prevez's previous employment in Cuba." Doc. 64 at 14. He states the Court denying these Rule 15 depositions, "will devastate his entire defense, assuring the [G]overnment a guilty verdict." *Id.*

With respect to each of these witnesses, Sikkema requests that the Court order the Government "to ask the appropriate agency to secure permission for these witnesses to enter the United States, whether by visa or parole," and only seeks Rule 15 depositions as a "fallback option."[4] Doc. 64 at 10–11.

1. *Directing the Government to Make Reasonable Efforts to Facilitate Witnesses' Entry.*

Sikkema argues that, at least with respect to Morciego Carrera and Corvo, their appearances at trial are only prevented by a lack of a U.S. visa or ability to be paroled into the country. Doc. 64 at 10. Although Sikkema acknowledges the Court may not require the Government to grant the witnesses entry to the country, it can "direct the

---

[4] Though Sikkema's initial motion requested a Rule 15 deposition of each of these witnesses, in his reply brief, he changes his request. Doc. 64 at 10. Because of this change, the Court granted the Government leave to file a *sur reply*. See Docs. 67, 71.

USAO to make all reasonable efforts to facilitate their entry and determine, if the government ultimately refuses them admission (and if no Rule 15 alternative is deemed available), that [Sikkema], as a result cannot receive a fair trial." Doc. 64 at 11.

To support this argument, Sikkema cites two cases. *Id.*[5] First, in *United States v. Theresius Filippi*, the defendant wanted his only material witness, who was an Ecuadorean citizen, to testify at trial. 918 F.2d 244, 245 (1st Cir. 1990). The defendant worked to secure the witnesses' testimony but the witness was denied an entrance visa. *Id.* The defendant twice wrote the Government in the case "requesting [the Government' attorney]'s assistance in procuring a visa" to no response. *Id.* The district court, finding the witnesses' testimony material, also requested the USAO provide such assistance. *Id.* at 246–47. Further, the defendant wrote the Immigration and Naturalization Service, requesting parole of the witness. *Id.* The trial continued without the foreign witness and the defendant was convicted. *Id.* On appeal, the First Circuit found that the Government's inaction violated the defendant's Sixth Amendment rights. *Id.* at 245. The court stated that "the onus on the United States was not to compel the attendance of [the witness] but merely to make it possible by requesting [parole] from the INS. . . Moreover, this failure caused the loss of defendant's only material witness." *Id.* at 247.[6]

*United States v. Saipov* was a capital case, in which the defendant sought his foreign relatives' testimony as mitigation evidence. 412 F. Supp. 3d 295, 302 (S.D.N.Y. 2019). That court directed the government to "submit applications to DHS seeking to

---

[5] Sikkema also cites caselaw involving "analogous circumstance[s]" concerning the government's grant, or refusal to grant, immunity to defense witnesses. Doc. 64 at 12–14. Sikkema argues from these cases that, while courts have recognized that they do not have the authority to compel the government to grant immunity, they can sanction the government if it fails to do so. *Id.*

[6] The First Circuit ultimately held that the defendant in this case waived this claim by proceeding to trial.

11

parole [the defendant's relatives] into the United States to facilitate their live, in-person testimony at trial." *Id.* at 303.  It did so because "this is a capital case and that the Government has acknowledged that [the relatives] are important mitigation witness, [] it [is] appropriate to require that parole applications be submitted to the Secretary of DHS for his consideration, regardless of their ultimate success." *Id.* at 303–304.

However, as the Government points out, the instant case is meaningfully different. Sikkema makes no argument that these witnesses are the only material witnesses, as was true in *Theresius Filippi*, and this is not a capital case, as was true in *Saipov*.  918 F.2d 244; 412 F. Supp. 3d 295.

Additionally, the Court finds that Sikkema has not met his burden to demonstrate that the testimony of these witnesses is sufficiently material to warrant this relief. Sikkema states that these witnesses will:  (1) demonstrate that Prevez and the Victim knew each other and (2) at least one of the witnesses will show that Sikkema owed money to Prevez unrelated to the murder.  Doc. 64 at 9.  With respect to the first, the Government "does not dispute that [the Victim] and Prevez had previously met in Cuba." Doc. 71 at 2.  With respect to the second, as the Government points out, Sikkema has not provided specific information concerning a "basis to determine how any of the Cuban Witnesses would have personal knowledge of these payments, when they happened, and for what amount." *Id.*   Further Sikkema has not indicated which of the three witnesses will provide that information.  Doc. 64 at 9 ( "[A]t least one of our Cuban witnesses will also confirm that [Sikkema] owed money to Prevez . . .").  To the extent that Christian is the witness who can confirm these findings, as the Government indicates Christian lives in New Mexico, his attendance could be compelled by a subpoena.  *See* Docs. 60 at n.3,

12

71 at n.5.  At this stage, Sikkema has not provided the Court adequate information to justify the Court directing the Government to request parole for these three witnesses.

Sikkema argues that, if the Court requires more detail, it should grant him leave to file an *ex parte* supplement.  Doc. 58-1 at 12–13.  He argues this is necessary to avoid "prematurely revealing defense strategy, while still providing the Court with the information it requires to adjudicate the motion."  *Id.*  In support of this argument, Sikkema cites *United States v. Kassar*,[7] in which Judge Rakoff permitted the defendant to file an *ex parte* submission relating to Rule 15 materiality.  572 F. Supp. 2d 375, 376 (S.D.N.Y. 2008).[8]

The Government objects to the request, and cites *United States v. Sharma*, in which Judge Schofield denied a similar request, stating that:

> The party seeking a criminal deposition has the burden of demonstrating its materiality.  If Defendants have or had further evidence or argument to make this showing, they should have presented it to the Court with their motion.  Even if they had, *ex parte* and *in camera* review of a witness proffer is unworkable as the Court is not in a position—without the Government's input—to determine whether the proffered testimony is material to a finding of guilt or the Government's core allegations.

18 Cr. 340 (LGS) (S.D.N.Y. Oct. 9, 2019) (Doc. 198 at 4–5).  It further argues that courts in this district routinely resolve Rule 15 motions without the need for *ex parte* or *in camera* review.  Doc. 71 at n.4 (collecting cases).

---

[7] The Government notes that in that case, the prosecution did not object to the *ex parte* submission, and ultimately the requested depositions were denied.  Doc. 71 at 3.

[8] Sikkema also cites caselaw to argue that *ex parte* review is routinely allowed in analogous situations involving Rule 17(c) subpoenas, under the Classified Information Procedures Act ("CIPA"), and under the Criminal Justice Act ("CJA").  Doc. 64 at 5–7.  The Government argues that these comparisons are not apt, because the CIPA expressly provides for *ex parte* submissions, the CJA does not need to be tested through the adversarial process, and Rule 17(c) submissions do not require a decision as to the materiality of the evidence.  Doc. 71 at 3.

13

The Court agrees with the reasoning of Judge Schofield and denies Sikkema's request to provide an *ex parte* submission with respect to the materiality of the testimony of these witnesses. Accordingly, the Court denies Sikkema's request that the Court order the Government to facilitate the entry of these witnesses.

### 2. *Rule 15 Depositions*

Alternatively, Sikkema seeks to conduct Rule 15 depositions of Morciego Carrera, Corvo, and Christian. Given the state of diplomatic relations between the United States and Cuba, "[t]o the extent that [the witnesses] actually reside in Cuba, the Government does not contest their unavailability." Doc. 60 at 12. However, the Government argues that Sikkema has failed to demonstrate that the testimony of these witnesses is material for purposes of satisfying Rule 15, and further even if the witnesses testimony was material, "countervailing considerations" weigh against granting pre-trial depositions. *See* Doc. 60 (citing the fact that U.S. government personnel would not receive authorization to travel to Cuba given the current geopolitical climate, the fact that travel would be "extremely dangerous," and that because Cuba does not extradite citizens to the United States these witnesses would be "unconstrained by oath or obligation to tell the truth.") Doc. 60 at 13–15; 60-1 (declaration of Joseph Hugdahl, Assistant Legal Attache responsible for managing FBI operations in Cuba).

In his reply brief, Sikkema argues that the Court should not rely on travel limitations only affecting the Government in deciding whether to grant the motion, that courts have rejected the argument that testimony from a citizen of a country without an extradition agreement with the U.S. is not material, and that the depositions could occur in a third country like Spain. Doc. 64 at 15–19. In it's *sur reply*, the Government argues

against conducting such depositions in Spain, because, according to Sikkema's own declarations, obtaining a Spanish visa could take witnesses two months.  Doc. 71 at 2.

However, as the Court has already decided that Sikkema has failed to demonstrate the materiality of these three witnesses, it denies Sikkema's request for a Rule 15 deposition of them.

## III.    CONCLUSION

For the reasons stated above, Sikkema's motion to take depositions pursuant to Fed. R. Crim. P. 15 is GRANTED in part and DENIED in part.  With respect to Prevez, Sikkema' motion to take a pre-trial deposition pursuant to Fed. R. Crim. P. 15 is GRANTED.  With respect to Dores Rodrigues, Souza, Nunes, Morciego Carrera, Corvo, and Christian, the request is DENIED.

The Clerk of Court is respectfully directed to terminate the motions, Docs. 58, 59, 65.


It is SO ORDERED.


Dated:    March 30, 2026
          New York, New York

_____
EDGARDO RAMOS, U.S.D.J.